## W. C. CORBETT v. J. D. McGREGOR ET AL.

### Decided October 19, 1910.

**1.—Contract—Rescission.**

The mere expression of opinion is not a representation upon which a contracting party is entitled to rely, and which, if found to be incorrect, would be sufficient to avoid a contract.

**2.—Same—Exchange of Land.**

In order to constitute fraud, such as would justify the cancellation of a sale or exchange of land, the vendor must have falsely stated or fraudulently concealed from the vendee some fact material to the title. A mere expression of opinion by the vendor is not sufficient.

**3.—Same—Rescission—Pleading.**

Where a vendee refused to accept the opinion or representation of his vendor as to the validity of the title to the land, but demanded the opinion of a reputable attorney that the title was good, and the vendor, without fraud or collusion with the attorney, furnished an opinion of a reputable attorney to that effect, and the vendee, relying and acting upon the attorney's opinion alone, closed the trade, the fact that the vendor knew at that time of an adverse claim to the land, would not be cause for rescission when the attorney upon whose opinion the vendee acted, knew nothing of said claim, the specific ground relied upon for rescission being, not fraud on the part of the vendor, but that the title was not good.

**4.—Same—Title—Question of Law.**

Whether a title to land is paramount and superior to an adverse claim is a question of law, often the most abstruse and critical, and which, the facts being fairly developed, is as much within the competency of the vendee to solve, or to procure others to solve, as within that of the vendor. Hence, an expression of opinion upon the matter, even though it be fraudulently made, can not be cause for the rescission of an exchange of land.

**5.—Rescission—Restoration of Consideration.**

A party to a contract can not invoke the equitable remedy of rescission when by his own acts he has made it impossible to restore the consideration received from the other party.

**6.—Same—Insufficient Evidence.**

In a suit to rescind an exchange of lands, evidence considered and held so insufficient in establishing the grounds alleged as to justify the trial court in instructing a verdict for defendants.

Appeal from the Fifty-fifth Judicial District, Harris County. Tried below before Hon. W. P. Hamblen.

*Presley K. Ewing* (*D. F. Rowe* and *J. A. Gillette,* of counsel), for appellant.—That Corbett, under the exchange contract, had the right to a title good and clear upon the abstract of the record, one that was marketable, free from reasonable doubt, and that a title with muniments supplied only by extrinsic evidence, such as limitation or proof of a deed by circumstances and the like, would not suffice under the terms of the exchange contract, and *a fortiori* would not when the extrinsic or parol evidence was not conclusive as matter of law, but such only as to raise a question of fact. See Bowles v. Umberson, 101 S. W., 842-844; Corbett v. McGregor, 84 S. W., 278; Roberts v. McFadden, 74 S. W., 105; Maupin's Marketable Titles (2nd ed.), sec. 284, pp. 711-713, sec. 283, pp. 705-710.

That McGregor's misrepresentations of the title as positively what the exchange contract required, i. e:, a title good and clear upon the abstract of the record, as he knew, were more than merely a layman's opinion, and were, in effect, that the abstract showed the facts for a good and clear title of record, thus making such misrepresentations, when relied on by Corbett in closing the trade without an abstract and examination, actionable as a basis for rescission, see Buchanan v. Burnett, 119 S. W., 1141, 114 S. W., 406; Hays v. Bonner, 14 Texas, 629-630; Rhode v. Alley, 27 Texas, 443, 445-447; Hawkins v. Wells, 17 Texas Civ. App., 360; Lee v. Hail, 114 S. W., 403; Schaeffer v. Blanc, 87 S. W., 745; Burns v. Dockray, 30 N. E., 552; 14 Am. & Eng. Ency. Law (2nd ed.), 46; Maupin's Marketable Title (2nd ed.), sec. 338, p. 855.

That *a fortiori* are such misrepresentations actionable for rescission when coupled, as here, with a confirmatory opinion of an expert, a reputable attorney, calculated to effect the deception, and made by the attorney as upon reference to him, so that his statement was as McGregor's mouthpiece and agent, see 1 Greenleaf's Ev., sec. 182; McKelvey's Ev., sec. 103, and 1 Elliott's Ev., sec. 258.

That no good faith or want of knowledge as to misrepresentations calculated to deceive can avail, since it is equally a fraud to retain the fruits of misrepresentations however innocently made, see Culbertson v. Blanchard, 79 Texas, 492; McCord v. Levi, 21 Texas Civ. App., 109;

Foster v. Kennedy, 81 Am. Dec., 57, 58; 14 Am. & Eng. Ency. Law (2nd ed.), pp. 94, 99-101.

That where fraudulent misrepresentations have induced a contract, it is no answer to a claim for relief that the truth might have been known by further inquiry, or had the deceived party not relied implicitly upon the fairness and honesty of his deceiver, see Labbe v. Corbett, 69 Texas, 503, 509, and cases following it, 3 N. T. R., 908.

That where a party to a trade is advised of a material fact, and knows or has reasonable cause to believe the other is ignorant of it and is acting under the belief that it does not exist, it is a fraudulent concealment to allow the other to be induced into the trade by his ignorance of such fact, and sufficient of itself for rescission, see Corbett v. McGregor, 84 S. W., 278; 14 Am. & Eng. Ency. Law (2nd ed.), 123, 72, 73, and Texas cases cited on p. 74.

*Andrews, Ball & Streetman,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a suit by appellant against J. D. McGregor, A. S. Fisher, Harris Masterson, Elliott Cage, Bettie Bryan and the Merchants National Bank of Houston, in which it is alleged that appellant was the owner in fee simple of certain land in Holman's addition to the city of Houston, but that appellees are claiming the same by virtue of a certain deed made by appellant to J. D. McGregor on June 18, 1903, which deed was null and void and was obtained by fraud and deceit on the part of McGregor, or through the mutual mistake of appellant and McGregor; that on June 17, 1903, McGregor claimed to be the owner in fee simple of a tract of land in the Stephen Jackson league, out of the Wirt Davis tract at Sour Lake, the same being six-sixteenths interest in the R. E. Brooks subdivision 18, and being 27 4/10 feet wide by 1261 long, and a contract was entered into by and between appellant and McGregor as follows:

"Sour Lake, Texas, June 17, 1903. This contract and agreement between W. C. Corbett, party of the first part, and J. D. McGregor, party of the second part, both of Houston, Texas, witnesseth: Party of the first part is owner of subdivisions 1, 2, 3 and 4, being the east one-half of 10-acre lot 39, Holman addition to the city of Houston, located as per map hereto attached, except 350 feet on the corner of the extension of Crawford Street, and 100 feet on extension of Holman Street heretofore sold to Fisher. A lien of $1600 exists against above property, also an agreement to accept a loan of $3000 at 7 per cent from one Neyhouse, for building purposes, and pay Judge Hamblen $40 to examine abstract for Neyhouse. There is also another lien of $500 which the party of the first part agrees to remove. Party of the second part is owner of an undivided six-sixteenths interest (6/16) in R. E. Brooks subdivision (No. 18) number eighteen of the Wirt Davis tract in the Stephen Jackson league, Hardin County, being 27.4 by 1261 feet. The parties hereto agree to exchange above lands with each other, with the

understanding that party of the first part shall reserve five lots of 50 by 100 feet adjoining each other, clear of all incumbrance. Said lots to front 350 feet on the extension of either Holman, LaBranch, Crawford or Elgin, as selected by party of the second part; good and sufficient warranty deeds to be made by each party, together with abstracts to be furnished showing a clear title to above properties, free from all liens except above mentioned lien of $1600, which is to be assumed by party of the second part. Party of the first part agrees to complete barn about 20 by 47 feet with shed of about 10 feet. Barn to be covered with galvanized iron and planked up and down, nothing to be done with the interior. Fence to be completed with woven wire as now started. Titles to be good, or made good. Abstracts to be owned jointly. Party of the second part reserves the right to pay party of the first part fourteen hundred dollars in lieu of five lots herein reserved by party of the first part."

Appellant alleged his full compliance with the terms of the contract and that deeds were exchanged between him and McGregor to their respective lands. It was further represented that McGregor and his attorney had falsely represented that the title to the land sold him was perfect, and concealed from him the defects in the title. Numerous defects are set forth in the title, and appellant prayed for a rescission of the exchange of the lands, and a cancellation of the deeds. These are in substance the allegations of appellant's pleadings which are very voluminous, embracing some thirty typewritten pages of the transcript. The cause was tried by jury, which was instructed to, and did, return a verdict for appellees, upon which verdict was rendered the judgment from which this appeal has been perfected.

The evidence showed that McGregor had told appellant that he had a good title to the land and that the abstract showed it. McGregor was not a lawyer and appellant stated that he would not have employed him to examine a title to land. He further stated: "I did not trade with him on the statement that he had examined it, but agreed to take the opinion of some reputable attorney or reliable attorney. I would take that opinion in lieu of the abstract, that is, in lieu of what he said. . . . I did agree to take the opinion of Judge Brooks on the title. and the opinion of Judge Brooks as introduced in evidence here was furnished me by Dr. McGregor, and on that we closed the trade, and the statement that was made to me by Dr. McGregor that he knew that the title was good. I did know, as I have said, that he, McGregor, was not a lawyer, and knew that he could not pass on an abstract, but he had told me that he had had the abstract examined, and that the title was good; that he knew it was good, and, furthermore, he would bring me the opinion of a good attorney to show that it was. And he brought me the opinion of Judge Brooks, to which I have just referred. I then closed the trade with him."

McGregor furnished appellant with the following opinion of Judge R. E. Brooks, who is admitted to be a reliable and reputable attorney:

"Beaumont, Texas, June 18, 1903.

"Dr. Jno. D. McGregor,

"Sour Lake, Texas.

"Dear Sir: I have carefully examined the abstract of title to block 18 of the R. E. Brooks subdivision of 28 acres of the Wirt Davis tract in the Stephen Jackson league, in Hardin County, Texas, and find the title thereto to be good in you at this date, free from any liens or encumbrance of any kind.

"R. E. Brooks."

Brooks swore that he was a lawyer by profession and had practiced from 1885 to 1895, when he went on the bench as a District Judge and remained in that office until 1905, when he resigned; that he had owned the land conveyed by McGregor to appellant and had examined the abstract of title to it and had other eminent lawyers to examine it, and that every objection to the title raised by anyone had been removed before he bought it. He stated that he had no interest in the trade between appellant and McGregor. There was nothing to indicate that he had acted fraudulently in giving his opinion as to the title, or that there was any collusion between him and McGregor. The evidence indicated that McGregor acted in good faith in his statements as to the title.

The evidence of appellant indicated that McGregor concealed no facts, and made no false statements as to any facts, but merely stated an opinion as to the title and sustained that opinion by that of an eminent judge. Appellant agreed to take the opinion of any reputable attorney and to act upon it, and McGregor obtained the opinion without resort to fraud or deceit, and appellant acted upon it. Appellant knew that he was acting merely upon opinions and he acted at his peril on those opinions. Appellant knew that McGregor was not a lawyer and did not place any reliance in his representations but required him to obtain the opinion of a reputable attorney, which he did. That attorney was not in the employ of McGregor and had no interest in the land.

"The mere expression of an opinion is not a representation upon which a party contracting is entitled to rely, and which if found to be incorrect will be sufficient to avoid a contract." The quoted language was used in a case in which a party pleading fraud had relied upon the opinion of the attorney of the opposite party as to the title of certain land. Little v. Allen, 56 Texas, 133.

It is not pretended that the evidence shows that McGregor concealed any fact material to the validity of the title, nor that his representations were contradicted by the abstract of title to the land. All the evidence tends to show merely an expression of opinion as to the title by McGregor, and to constitute fraud he must have falsely stated or fraudulently concealed some fact material to the title from appellant. Maupin, Marketable Titles, § 106. There could have been no fraudulent design in the statement of McGregor that he had a good title to the land, for it was merely an expression of his opinion, which was supported, however, by a number of excellent lawyers who had examined the abstract. There

is not a circumstance tending to raise the suspicion that the representations of McGregor were intended to prevent a full examination of the title on the part of appellant. Milby v. Hester (Texas Civ. App.), 94 S. W., 178. Appellant evidently placed no reliance upon the statements of McGregor, because he did not act upon them, but demanded and received the opinion of a reliable and reputable attorney and upon that opinion he acted. There is no evidence of fraud or concealment, as alleged in the pleadings of appellant.

There was testimony tending to show that W. H. Jones and Travis Jones had informed McGregor that the latter intended to sue for the land, but whether this was before or after the sale to appellant was not made clear. If, however, McGregor knew that Travis Jones intended to sue for the land and did not communicate that fact to appellant, this would not constitute such fraud as would justify a rescission of the contract of sale, because appellant refused to act on the representations of McGregor and based his action on the opinion of an attorney who knew nothing of any suit that was contemplated by Travis Jones.

The pleadings of appellant do not allege that McGregor knew that a suit was contemplated by Travis Jones and concealment of that fact is not made a ground of rescission. The suit is based on defects in the abstract of title, which appellant agreed to waive if the opinion of a reputable attorney in regard thereto was furnished. There is no representation in the written contract that the title was perfect, the only agreement being "titles to be good or made good."

If appellant acted upon the opinion of McGregor that his title was good, he could not rescind for fraud, for it was an opinion, as was that of Judge Brooks, upon a question of law. "Whether a title is paramount and superior to an adverse conflicting claim is a question of law, often of the most abstruse and critical import, and which, the facts being fairly developed, is placed as much within the competency of the vendee to solve, or to procure others to do so, as within that of the vendor." Jasper v. Hamilton, 3 Dana (Ky.), 284; Maupin, Marketable Titles, § 106.

There can be no doubt that if McGregor had known of an outstanding title paramount to his own and had not revealed that fact to appellant, and appellant had acted in the matter on his representations, it would form a ground for rescission; but no such case is made by appellant. It was not known then to any one, nor is it known now, that any third person had a title to the land superior to that of McGregor.

The trade in this case seems to have been made under the excitement of an "oil boom," when land was bringing fancy prices, and which did not appear near so desirable after the boom had collapsed, and sober common sense had resumed its sway. Appellant was willing to risk the chances of a title upon the opinion of an attorney, not of his choosing, when the odor of oil was in the atmosphere and was wafted on every breeze, but the trade did not appear so advantageous after matters had settled to their normal plane, and he seeks to nullify and set aside the

contract of exchange of the lands even though under the terms of the written contract the title could be "made good." This view is borne out by the pleadings of appellant which state that "more than a reasonable time had elapsed for the making of the title to said Sour Lake property good, and the land itself, and every parcel of said subdivisional lot No. 18, had greatly depreciated in value, in fact became worthless, and it is now; so that then or thereafter to allow the title to be made good against plaintiff would entail loss and injury upon him, making such course unjust and inequitable toward him." In other words, fictitious values placed on the land have passed away and values have assumed their normal position, and because appellant did not get or take advantage of the opportunity to unload on someone else, the contract should be set aside.

It appears from the evidence that appellant went into possession of the land he obtained from McGregor and had a well dug thereon, which, instead of producing oil, brought forth salt water. Probably before the salt water came in, he and others who owned a strip of land known as No. 18 agreed to a partition, whereby appellant and two others were given the north end of the strip and George P. Hall and others the seven lots, including lots 1 and 2, on the south end of the tract. The evidence tended to show that the south end was the oil producing part and consequently much more valuable than the north end. By this transfer of part of the land obtained from McGregor appellant made it impossible for him to restore to his vendor the land sold to him and he could not invoke the remedy of rescission of the contract. The partition was made without inducement on the part of McGregor and has no connection with any fraud that may have induced the original exchange of the lands. In the partition, he had voluntarily given up the oil producing portion of the land, the only part that had any appreciable value. The south part of the land which he conveyed to Hall and others produced immense quantities of oil and that part which he reserved and which alone he could restore to McGregor was utterly valueless. Appellant could not, if he would, place the party from whom he seeks relief in the same position that he was before the transaction, and has placed himself in a position where he can not invoke the equitable remedy of rescission. He can not, after he has frittered away the only valuable part of the land, obtain equity by offering to return only a portion of the land, and that the valueless portion.

There were no defects in the title alleged except those growing out of the suit instituted by Travis Jones, and the possession of appellant has never in any manner been interfered with, and in a test case styled Jones v. Robb, filed in Harris County, a judgment was rendered upholding the title of appellant to the land. The judgment in that case was affirmed by the Court of Civil Appeals of the First District. Jones v. Robb, 35 Texas Civ. App., 263 (80 S. W., 395). That judgment would seem to sustain the opinions of McGregor and Brooks that the title to the land was a good and valid one. Appellant has absolutely no

ground whatever for a rescission and the court did not err in instructing a verdict for appellees. Appellant has received no damage through any fraud upon the part of McGregor, but the damages, if any, have arisen from a speculation voluntarily entered into by him which brought forth for him no good results. He traded his city property for the chance of oil, and when the venture was a failure he can not save himself by invoking the aid of a court of equity to place him in his original position.

The issue of mutual mistake did not arise in the case. There was no mistake as to the strength of the title to the land, and when the trial was had in which the judgment was rendered from which this appeal has been perfected every defect had been removed from the title. The inability to restore the *status quo* of the parties would apply as well to a case of mutual mistake as to a case of fraud. There was no evidence of fraud as to the quantity of land. Appellant, after measuring the land and agreeing to a partition of it, held it, without complaint as to quantity, until he sought to rescind the contract, and could not be heard then to complain that there was a deficiency. The land was open to him and he knew its shape and measurements. No confidential relations existed between McGregor and appellant, but they were dealing with each other upon equal terms so far as the size, shape and measurement of the land was concerned. Mooney v. Miller, 102 Mass., 217.

The matters complained of in the other assignments of error are immaterial under our view of the case and are all overruled. The judgment is affirmed.

*Affirmed.*

Writ of error refused