**SHERMAN et ux. v. SIPPER et al.**

No. 13895.

Court of Civil Appeals of Texas.
Fort Worth.

May 5, 1939.

Rehearing Denied June 9, 1939.

Norman, Stone & Norman, of Rusk, and Smithdeal, Shook & Lefkowitz, of Dallas, for appellants.

Guinn & Guinn, of Rusk, for appellees.

SPEER, Justice.

This is a suit in equity to rescind a contract exchanging lands by warranty deeds between the parties, and to cancel the deeds executed in consummation of the contract.

J. W. Sipper and wife, Dollie Sipper, sued T. A. Sherman and wife, Birdie Sherman, B. T. Williams and Jewel W. Byrd, in the District Court of Cherokee County, to rescind a contract of exchange of lands, for fraud and misrepresentation of facts by the defendants, Sherman and wife. Williams and Byrd were named as defendants under allegations that they were claiming some kind of an interest in the lands which plaintiffs sought to repossess under oil and gas leases from the Shermans.

The petition alleges that plaintiffs were formerly the owners of 218-½ acres of land, a part of the Medford Survey, and that the Shermans represented themselves to be the owners of 49.75 acres of the Bartee League, all in Cherokee County, Texas. Both tracts of land are described by metes and bounds in the petition and will not be further described here. That plaintiffs owed approximately $1,350 on the 218-½ acres, to the Federal Land Bank of Houston. That the Sippers and Shermans desired to exchange lands, the former to take the 49.75 acres in fee simple, free of incumbrances and reservations, the latter to take the 218-½ acres, with good and merchantable title, except as to the indebtedness against it, and to assume

the payment of the $1,350, or such amount as should then be owing thereon.

Allegations were made by plaintiffs to the effect that the Shermans represented they had a good and merchantable title to the small tract which they proposed to exchange, and that there were no liens, incumbrances or reservations against it that would affect the title thereof; that plaintiff, J. W. Sipper, was a person with no education, unable to read or write, and that he relied upon the representations by Sherman as to the title, but for which representations he would not have made the trade.

The petition shows that on November 25th, 1931, the parties made the exchange of lands and executed warranty deeds to each other. That Sherman furnished to Sipper a partial abstract of the title to the 49.75 acre tract covering from May 25th, 1915, to November 19th, 1931, and that said partial abstract did not disclose conveyances affecting the title prior to the first date mentioned. That Sherman did not have a good and merchantable title to the tract conveyed to plaintiffs, in that, during the year 1887, Leon and H. Blum Land Company, the then owners of the land, conveyed it to one Battle and reserved in the deed the iron ore and all mineral rights therein. That the representations of Sherman to the Sippers, that he had good title to the land were untrue and were material statements of fact, relied upon by plaintiffs, but for which fraud and misrepresentations they would not have entered into the contract and executed their deed of conveyance. That said false and fraudulent statements were made by the Shermans with the intent to defraud and deceive plaintiffs as to the nature of the title to the land held by the Shermans, and as to its value.

Allegations were also made in the petition that plaintiffs did not know that the Shermans did not own a clear title to the lands proposed to be exchanged with plaintiffs, nor of the reservation of iron ore and minerals in the former conveyance by the Blum Land Company. Plaintiffs learned of the defect in the title to the land taken by them and demanded a rescission of the trade and tendered back the deed taken and asked for a reconveyance of the lands held by Sherman, and otherwise offered to do entire equity. Prayer was as indicated by our statement of the purpose of the suit.

Defendants, Williams and Byrd, filed disclaimers and the Shermans plead general denial and special answers to the effect that the Sippers went into immediate possession of the 49.75 acres in 1931, and continuously since that time occupied and used the land, have not been evicted therefrom, and therefore should not be awarded the relief sought, either for damages for breach of the warranty in the deed, or for rescission because of defects in the title; that since the date of the exchange of lands and while plaintiffs were holding possession under the conveyance, defendants had incurred expenses of payment of back taxes on the 218-½ acres and had paid to the Federal Land Bank the indebtedness against that land, and that plaintiffs are estopped now to procure a rescission of the trade. There were further special defensive pleas of the statutes of two and four years limitations.

Plaintiffs filed supplemental pleadings in response to the answer of the Shermans, pleading a lack of knowledge of the defects in the title until just prior to the time demand was made upon defendants for rescission, and further that the Shermans had received approximately $2,000 more for leases on the 218-½ acres than was required to pay the taxes and indebtedness against the land and approximately $1,000 more than the amount received by plaintiffs from the lands in their possession. There were further allegations made that but for the fraud and misrepresentations made by the Shermans and relied upon by the plaintiffs, the latter would have received said funds and that they were damaged in the amounts shown, as a result of the wrongs of the Shermans.

Defendants, Williams and Byrd, filed disclaimers and were discharged from liability by the judgment of the trial court.

A jury trial was had and a verdict returned in response to special issues, the answers to which were substantially as follows: 1. Sherman stated to Sipper during the negotiations and before deeds were exchanged that Sherman had a clear title to the 49.75 acres of the Bartee League. 2. Sipper relied upon such representations by Sherman that his title was clear. 3. The minerals in the 49.75 acres of the Bartee League had been reserved by Leon & H. Blum Land Company prior to November 25th, 1931 (the date on which the deeds were exchanged between the parties). 4. The representations of Sher-

man that he had a clear title to the 49.75 acres were false. 5. Sherman stated to Mrs. Dollie Sipper, during the negotiations and before the deeds were executed, that he had a clear title to the 49.75 acres. 6. Mrs. Dollie Sipper relied upon the statements of Sherman that the title to the land was clear. 7. The representations made by Sherman to Mrs. Dollie Sipper, that he had clear title to the land, were false. 8. Sherman represented to Sipper that the minerals under the 49.75 acres would be conveyed to Sipper. 9. Sipper relied upon Sherman's representations that the minerals would be conveyed to him. 10. The representations made by Sherman to Sipper, that the minerals under the land would be conveyed to him, were false. 11. Sipper first learned that the minerals under the land conveyed to him had been reserved, in 1935, after Sipper was summoned to court at Tyler.

The Sippers moved for judgment and the Shermans filed motion for judgment non obstante veredicto. The court heard both and entered judgment for plaintiffs on the verdict of the jury. By the judgment entered, both deeds, that of the Sippers to the 218-½ acres of the Medford Survey, and that of the Shermans to the 49.75 acres of the Bartee Survey, were canceled, and each party was awarded title and writ of possession to the respective tracts theretofore conveyed by him. The judgment describes the tracts as in the pleadings. In the adjustment of equities between the parties, the judgment recites: "That the defendants, T. A. Sherman and wife, Birdie Sherman, have received benefits and rents in excess of all taxes and incumbrances paid by said defendants against said 218-½ acres of the J. Medford Survey and which exceed any rents and benefits which have been received by plaintiff, J. W. Sipper, on the 48-½ acres of the Wm. Bartee League and of which benefits and amount there is no dispute." The trial court further provided by the decree for the cancellation of the deeds and rescission, "subject to no further or additional charge or burdens to either party herein."

After the court had overruled their motion for new trial, the defendants perfected this appeal to the Texarkana Court of Civil Appeals, and under an equalizing order by the Supreme Court, it is before us in its regular order for review.

We shall continue throughout this opinion to refer to the parties as they appeared in the trial court, except in instances where it becomes necessary to mention one by name.

Defendants have brought forward in their brief 57 assignments of error, and have discussed them under 17 propositions. These may be disposed of under groups which are based upon similar facts and rules of law. As we view the record, the decisive points, as claimed by defendants, are: 1. Where, as in this case, the plaintiff, as grantee in a conveyance, accepts a warranty deed to land, procures a partial abstract of title which does not disclose the defect in the title, has an attorney of his own selection to examine it, receives an approval of the title from the attorney, and accepts it thereafter, cannot, as a matter of law or fact, be heard to say that he relied upon an alleged fraudulent statement of the grantor that he had a clear title. 2. An essential element of one's equitable right of rescission of an exchange of lands for fraud, is the establishment as a fact that the grantor had the intent to defraud him at the time such fraudulent acts and statements were done and made; that in the absence of a jury finding to that effect, he cannot recover. 3. The plaintiff having failed to allege or establish by competent evidence and to procure a jury verdict thereon that he suffered pecuniary injury, loss or damage, he could not recover and that judgment should have been entered for defendants. 4. The judgment entered was inequitable to defendants, since they had paid approximately $1,500 in taxes and indebtedness against the land and plaintiffs had received $340 in revenues from the smaller tract held by them since the date of the exchange; that a rescission such as that ordered by the court did not restore the parties to their respective former positions.

We think the first group of points raised and mentioned by us above presents the question most decisive to the disposition of this appeal. If defendants' (appellants') theory of the law is correct, the court should have sustained their motion for judgment, disregarding the verdict of the jury. They argue, even to concede that defendants represented to plaintiffs that they had a good title to the land offered in exchange, that since plaintiffs took a partial abstract of the title to an attorney and procured his advice as to the title, it follows that, as a matter of law, plaintiffs did not rely upon what defendants had told them about the title, and that no false

or fraudulent statement made by defendants, not relied upon by plaintiffs, could form the basis for a judgment of equitable rescission.

We cannot agree with defendants' contention in construing the effect of the testimony. It is unquestionably true that the title to the 49.75 acres which plaintiffs received in the exchange was bad, in that the mineral rights therein had been reserved by one of grantors' predecessors in title. The undisputed testimony shows that plaintiff, J. W. Sipper, could not read or write.

Other parts of the evidence are conflicting. Mr. Sipper testified that there were some negotiations between him and Mr. Sherman, in which he asked Mr. Sherman about the 49.75 acres, whether or not he had sold any royalty on the land, and if it was leased, and Sherman said he had done neither; that they agreed upon a trade by which the Sippers would deed to Sherman the 218-½ acres, and the Shermans would deed to Sipper the 49.75 acres, and assume Sipper's debts against the larger tract; that each agreed to give the other a clear title and abstract to land conveyed in the exchange; that Sherman went off to get his abstract and brought back some papers and told the witness that was his abstract and handed him some papers; Sipper said he told Sherman it didn't look like an abstract to him, and he was told to take it to Mr. Norman and ask him if it was not an abstract; that Norman advised Sipper it was not an abstract. Sipper further testified in regard to the abstract: "I told him he would have to have one made, if that was what he was going by, that I didn't accept this abstract. He said 'where will we have it made?' and I said * * * 'Mr. Kerr used to make abstracts for me.' He said, 'Well go there and see what he will make it for.'" Witness said he had the abstract made at Sherman's request; that he could not read and did not know what was in the papers, but that whatever abstract was made, he took it to Judge Shearon and had him examine it and he said it was all right; that he told the abstractor he wanted a clear abstract to the land; that he got no abstract from Sherman, just the papers exhibited to him while on the stand. He said he told Sherman he was going to have a lawyer look at the abstract. He said he did not know the iron ore and mineral rights had been reserved under the land he was getting, and if he had known it he

would not have made the trade; that he first learned of the reservation contained in the old deed some time in 1936; that he relied upon the representations of Sherman that his title was clear, and if he had not made those statements, he (Sipper) would not have made the exchange.

Plaintiff, Mrs. Dollie Sipper, testified that when she and her husband traded with the Shermans, they gave Sherman a good deed and clear title, and Sherman said he was giving them the same thing, that is what he said; that she thought they were getting a clear title; Sherman told her, "We were getting a clear title from top to bottom, and I asked him 'If that included all the mineral rights' and he said 'it did.'" That she would not have traded if he hadn't said that.

Carl McCann, a son-in-law of the Sippers, testified that he heard the conversation between the parties on the court square the day they traded; that Sherman told Sipper in the conversation that he would give him a clear title to the land; that he had not leased or sold any of the mineral rights.

The defendant, Sherman, testified substantially, that after some months in which he and Sipper talked trade, they finally reached an agreement with reference to the exchange; that nothing was said by either party at any time about the other giving a clear title, nor was the matter of ores or minerals mentioned, if there was he didn't remember it; that he didn't remember to have ever had a conversation with Mrs. Sipper about the trade, nor did he remember that he had ever told her he was giving a clear title; that he didn't recall if the title was ever mentioned by either party. That he did not say anything about the title or mineral reservations to Sipper in the presence of McCann; that he thought he was giving Sipper a clear title; he didn't know there were any reservations of ore and minerals in any previous conveyance; that he intended to give Sipper all he had in the land; that he signed a warranty deed and understood by that that he was conveying to the other party all he had in the land.

Sherman further testified that before they closed the trade, he gave to Sipper his old abstract, since Sipper said he wanted a lawyer to look at it; that he came back and said another abstract would have to be made and wanted Sherman to pay for it, but that he only agreed to pay five dol-

lars on it; that he did not know what Sipper had told the abstractor but that he (Sherman) never did see the abstract again after he gave it to Sipper.

The testimony of all the interested parties is lengthy but what we have said is a fair summation of it as relating to whether or not Sipper and wife relied upon the representations of Sherman as giving a clear title.

■■■ The testimony is conflicting and is sufficient to support a jury verdict either way. The Sippers said Sherman agreed to give a clear title and if he hadn't they would not have traded; that they relied upon what he said. Sherman said nothing was mentioned about the title, but that he thought he was giving them clear title, he thought he had such a title and intended to give them what he had. Other things, such as having an attorney examine the abstract and receiving an approval of the title by the attorney, is a circumstance of course, which indicates that the Sippers, at least, were not relying solely upon what Sherman had said. These matters were before the jury, who saw the demeanor of the witnesses on the stand, and was charged with the responsibility of judging the weight of the testimony and the credibility of the witnesses. The verdict, as above indicated, was that Sherman had represented that he was giving clear title, that such representations were false and that the Sippers relied upon those statements. Even though the testimony would have supported a different finding, there is sufficient evidence of a substantial nature to support the verdict of the jury, and we are not at liberty, if we were inclined to do so, to substitute our own judgment for that of the jury. The rule seems definitely settled now, that if discarding all adverse evidence and giving credit to all evidence that is favorable to the successful party, and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict. 17 Tex. Jur. p. 910, sect. 410. It is argued by defendants that the evidence shows as a matter of law, that the Sippers did not rely upon the statements, claimed by them to have been made by Sherman. If they are correct in this proposition, then the court should have given a summary instruction in their favor, or should have sustained their motion for judgment non

obstante veredicto. In view of the evidence referred to, we think, clearly there was an issue of fact to be decided by the jury. In determining whether or not an instructed verdict should be rendered, courts must consider the testimony in the light most favorable to the party against whom peremptory instruction is to be given. City of Houston v. Chapman, Tex. Com.App., 123 S.W.2d 652. Applying the rule thus announced by our Supreme Court, the issues were properly submitted to the jury, and, as stated, determined against the contention of defendants. There are many cases decided in this State which contain expressions in support of defendants' contentions; but we have read all that have been cited, and such as were found by an independent investigation of our own, and believe the disposition of the points involved here are best determined by our Supreme Court, in case of Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 1142, 132 Am.St.Rep. 900. That was a suit to rescind a sale and purchase of real estate because of false statements by grantor that he had and was conveying good title. It was there held that such a statement, although embodying a conclusion, was in effect a representation by grantor of a material fact which, if false and relied upon by grantee, would show grounds for a rescission of the contract of purchase. In that case an abstract was furnished to the grantee by grantor and the defect in the title was disclosed in it. The grantee, with another, looked over the abstract but was untrained in such matters, and in fact could not read some parts of it. Whether his inability to read those parts was because of its being illegible or whether those parts he could not read were immaterial to the defects shown, is not disclosed. Another very striking similarity to the instant case is found in the case cited; it was held that the grantee need not rely solely upon the false statements of the grantor to be entitled to a rescission, but that it is sufficient if it be found that he did rely upon grantor's statements. It may be said from the evidence in this case that the Sippers did not rely solely upon Sherman's false statement that he would convey clear title, for he consulted an attorney about it, but both Sipper and his wife testified, and the jury so found, that they did rely upon Sherman's statements. It is also contended in this case that Sherman furnished to Sipper an abstract which showed the defect in

the title, even though it was unknown to either party, and that since Sipper undertook to have the title investigated, he should have discovered the defect by pursuing the course begun by him. The evidence is undisputed, that if such an abstract was furnished by Sherman, Judge Shearon, who examined the supplement, did not see it, nor did Sipper seek to have that part of the abstract examined. These things being true, are strong circumstances corroborating Sipper's contention that he relied upon Sherman's statements that the title was clear. It was said, in the Buchanan v. Burnett case, supra: "Burnett was under no duty to his vendor to investigate the truth or falsity of statements and representations made to him in connection with the title. Labbe v. Corbett, 69 Tex. [503], 509, 6 S.W. 808. In the case cited the court lays down the rule in the following quotation from another authority: ' "When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.' " ' " It was further held in that case that under the conditions mentioned therein, which are very similar to those in the instant case, that the purchaser was entitled to a rescission by doing equity, such as is shown to have been offered by plaintiffs in this case. The above principles have been followed by our courts and seem to be the settled rule of law in this State. See also Fahey v. Kaies, Tex.Civ.App., 181 S.W. 782, writ refused; Peck v. Robinson & Smith, Tex.Civ.App., 194 S.W. 456, writ refused; Freshwater v. Hoyt, Tex.Com. App., 259 S.W. 923; Johnson v. Sugg, Tex.Com.App., 291 S.W. 857; Al Parker Securities Co. v. Owen, Tex.Com.App., 1 S.W.2d 271, and a number of cases by our Courts of Civil Appeals, which do not seem to have reached the Supreme Court.

In support of defendants' contention that the evidence shows that as a matter of fact and law, Sipper did not rely upon the statements of Sherman as to giving a clear title, we are cited to several cases which contain expressions tending to support their contention. We have read each of those cases and think the facts are distinguishable from those before us. We shall refer briefly to those cited which reached the Supreme Court. In Patterson v. Bushong, Tex.Civ.App., 196 S.W. 962, writ refused, a rescission was sought and denied to a purchaser because of an alleged misrepresentation by the grantor as to the value of the lands exchanged. A representation as to values, when not dependent upon a contingent event, about which the purchaser cannot know, presents a different question, to our mind, to that in the instant case. But in the case cited it appears that the purchaser went with another upon the lands and inquired of disinterested persons in a position to know values and thereafter made the trade, and the court held he could not rescind because of the alleged misrepresentation of value by the seller.

Wortman v. Young, Tex.Com.App., 235 S.W. 559, involved an action for rescission because of false representations by the seller. The court recognized the rule announced in the Buchanan v. Burnett case, supra, but said the rule would not be applied when it affirmatively appeared, as in the case under consideration, that the purchaser knew, both at the time the alleged false statements were made by the seller, and when he later closed his trade, that the representations were false, and held that under such conditions he could not in good conscience demand and receive an award of rescission.

Donoho v. Hunter, Tex.Com.App., 287 S.W. 47, 49, involved a rather complicated situation, which had been before the Court of Civil Appeals and before the Commission of Appeals, and was finally decided after the Supreme Court had granted rehearing from an opinion by the Commission of Appeals. The purchaser of land sought a rescission because of representations of the seller that he would convey clear title. The court's discussion of the case shows that the purchaser made an independent investigation of the title with the assistance of another, by searching the records of the county where the land was situated. The point involved was whether or not the State had reserved a royalty in the mineral interests under the land. They did not find on the record such a reservation but found references to a permit by the State to prospect for oil and

the clerk, who was custodian of the records, advised plaintiff to write or wire the General Land Office; this he did not do. In holding that the purchaser was not entitled to a rescission but was bound by his own investigation, the court, among other things, said: "A reading of Hunter's [purchaser's] own testimony shows that he was very greatly exercised all the time about this state permit. * * * It is significant that the county clerk told him the safe thing to do was to wire the general land office at Austin. * * * It is undisputed that he could have discovered this permit by following the advice of the county clerk and wiring the land commissioner." By reference to the case passed upon by the Court of Civil Appeals, in Donoho v. Hunter, 242 S.W. 282, it appears that the cause was tried to a jury on special issues, and that the verdict was favorable to the purchaser, who was asking for rescission. But by a full discussion of the facts by the Commission of Appeals, the verdict was disregarded and it was held that the evidence did not support the judgment of rescission. To read the facts in the several reported appeals, is to see the distinctions between that and the case at bar.

In Corbett v. McGregor, 62 Tex.Civ. App. 354, 131 S.W. 422, writ refused, a purchaser of land sued the seller for rescission because of defects found in a title, which the seller had represented as being good. The purchaser (plaintiff) testified that he had agreed with the seller to take the approving opinion of a reputable lawyer on the title, and that he preferred that to what the seller had said, knowing the seller was not a lawyer. Upon this type of evidence the court instructed a verdict for the seller, and the judgment was affirmed by the Court of Civil Appeals, and a writ of error denied by the Supreme Court. The only similarity between that and the case before us is that an attorney had approved the title. But in the case referred to, the buyer expressed his preference for the attorney's opinion over that of the seller, but not so in our case, and therein, we think, lies the distinction.

We think the holding in the Buchanan v. Burnett case, supra, is decisive of the point before us, and we therefore overrule the assignments of error presented.

█ Under the second group of assignments and propositions, as designated by us, defendants, the Shermans, contend that before plaintiffs could recover in a rescission action, it must affirmatively appear that Sherman intended to deceive Sipper in the claimed statement that he had and would convey to Sipper a clear title to the land. There are some authorities, which under facts related, make a similar broad statement of the law. But we think under the facts before us, the application of such liberality in the rule as contended for, would defeat the ends of justice, when one is sought to be held accountable for his wrongful acts. Sherman, it appears, was not aware that he did not have a clear title; in fact, we think he had every reason to believe he did have. It requires no stretch of the imagination, nor is it unreasonable for one to believe, as did the jury, that Sherman stated that he had good title and would convey a clear title "from top to bottom", as expressed by Mrs. Sipper. By Sherman's own testimony, he believed he was doing that very thing. If, then, he did make such representation, it would be unreasonable to say that he did not intend for the purchaser to believe it. He said he believed it himself. Under such conditions, Judge Sharp, speaking for the court, in Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572, on page 575, said: "The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another, and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive. Loper v. Robinson [54 Tex. 510]; United States Gypsum Co. v. Shields, 101 Tex. 473, 108 S.W. 1165; Wortman v. Young (Tex.Civ. App.) 221 S.W. 660." The case from which the foregoing quotation is taken is cited by defendants in their brief. They frankly admit, however, in the discussion of the point, that the authorities are not in perfect harmony. The assignments raising the question are overruled.

█ It is contended by the third group of assignments that plaintiffs could not recover in this case, and that the judgment should be reversed, because they failed to allege and prove that they had suffered any pecuniary injury, loss or damage occasioned by the matters complained of. We think the pleadings are sufficient to support evidence on the point. The record shows without dispute that under the proposed deal, plaintiffs were to receive

in exchange for their land the smaller tract and that defendants were to assume the payment of the indebtedness to the Federal Land Bank of Houston, of approximately $1,300. Defendants admitted that they sold oil leases on the 218½ acres for more than enough to pay the debt. To go no further into the various sales and transactions, it follows that plaintiffs lost the proceeds of those sales, at least the excess, over the indebtedness. Sherman said he received more than enough to pay the debts. A fair calculation would show he had received perhaps $800 or $1,000 more than all sums paid out by him and those received by plaintiffs. With these uncontradicted facts, there was no question or issue of fact on that point to be determined by the jury. It follows that the failure of the court to submit such an issue and have it answered presents no reversible error. We are supported in this by the recent case of Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117.

By the final points asserted and grouped by us as four, it is claimed that the judgment of the court in rescinding as he did the contract and awarding title to each of the tracts as they stood before the purported deal was made, was inequitable because defendant had paid the Federal Land Bank debt and a large amount of back taxes owing by plaintiffs, and he could not be equitably protected by a rescission of the trade. We think this contention is without merit. Mr. Sherman testified that he received at least $2,470 for mineral leases and made certain crops on the land during the time he possessed it, the value of the crops not being shown; that he paid the indebtedness out of these funds or at any rate received more than enough to pay the debts. After deducting all he had paid out on the debts, and the amount received by Sipper, Sherman still had anywhere from $780 to an indeterminate sum above that left in his hands. When a complaining party seeks rescission of a contract, he must, of course, do equity. But it has never been held in any court that has come to our knowledge that he must pay into court the lesser sum received by him in order to require his adversary to pay in the larger sum. The court may adjust the equities by deducting the lesser from the greater sum, and hold the offending party only for the difference. This rule is thoroughly discussed in the case of McCleskey v. McCleskey, Tex.Civ.App., 7 S.W.2d 657, and we approve what is there said. Moreover, it will be noted by the judgment entered, in the part quoted by us in the beginning of this opinion, that the court did not hold defendants accountable for any excess received by him, over the debts. He admitted that he received more than he had paid out, and hence we see no room for complaint on his part, because of a lack of equity. The assignments are overruled.

There are other assignments brought in to defendants' brief, but it would obviously extend this discussion to an unreasonable length to analyze them all. We have carefully studied each and find no merit in them worthy of a reversal, and therefore overrule them.

Finding no error in the record for which the judgment of the trial court should be reversed, it is hereby affirmed.