SPRADLIN v. I. & L. DEVELOPMENT CO. et al.

No. 14485.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1952.

Rehearing Denied Nov. 21, 1952.

J. Lee Zumwalt and Burt Barr, both of Dallas, for appellant.

Eades & Eades, H. P. Kucera, City Atty., H. Louis Nichols and Chas. C. Wells, Assts. City Atty., Henry P. Edwards, C. C. Renfro, and Worsham, Forsythe & Riley, all of Dallas, for appellee.

BOND, Chief Justice.

The appellant, Lee R. Spradlin, instituted this suit against the I. & L. Development Company, Dallas Title & Guaranty Company, Travelers Insurance Company, and the City of Dallas, for damages stemmed from a real estate transaction. In 1946 Spradlin and the Development Company entered into a real estate deal in which the Development Company conveyed to Spradlin, by general warranty deed, a lot in the City of Dallas for a consideration of $7,350, evidenced by note and deed of trust executed by Spradlin to Travelers Insurance Company. Simultaneously with the execution of said contract and deed, and the note and deed of trust, the Dallas Title & Guaranty Company executed and delivered to Spradlin its title insurance policy, guaranteeing that by virtue of said deed and conveyance of said property the grantee Spradlin has a "good and indefeasible

title to said real estate," subject only to the Travelers Insurance Company's note and deed of trust. The insurance policy, material here, provides:

"Said Company shall not be liable in a greater amount than actual monetary loss of insured, and in no event shall said Company be liable for more than Seven Thousand Three Hundred Fifty And No/100 ($7,350.00) Dollars, and shall, at its own cost, defend said insured in every suit or proceeding on any claim against or right to said land, or any part thereof, adverse to the title hereby guaranteed, provided the party or parties entitled to such defense shall, within reasonable time after the commencement of such suit or proceeding and in ample time for defense thereto, give said Company written notice of the pendency of the suit or proceeding, and authority to defend, and said Company shall not be liable until such adverse claim or right shall have been held valid by a court of last resort to which either litigant may apply, and, if such adverse claim or right so established shall be for less than the whole of the property, then the liability of the Company shall be only such part of the whole liability limited above as shall bear the same ratio to the whole liability that the adverse claim or right established may bear to the whole property. In absence of notice aforesaid, the Company is relieved from all liability in respect to such claim or demand; provided, however, that failure to notify shall not prejudice the claim of the assured, if such assured shall not be a party to such action or procedure, nor be served with process therein, nor have any knowledge thereof, nor in any case, unless the Company shall be actually prejudiced by such failure. Upon payment of any loss hereunder, the Company shall be entitled to be subrogated to all rights of insured against all other parties."

The property in controversy at the time of said transaction was encumbered,—

traversed beneath the surface by a 36-inch water main installed in 1928 and maintained since that time by the City of Dallas with tacit consent or agreemnt made and entered into by the city and Christian C. Weichsel, the then owner of the premises; and thereafter all rights arising thereto by operation of law were vested in the city.

The water main traversing the premises was unknown to all parties involved in this suit,—each innocent in the transaction, and there is no element of fraud or deception practiced by any one of the parties. At the time the Development Company acquired the property, the City of Dallas was in actual possession of the easement; and at the time of Mr. Spradlin's purchase the city had all reasonable and necessary manner in repairing the main; and, in absence of negligence, not liable for damages to the owner of the premises.

In 1928 Christian C. Weichsel owned 20.66 acres of land across which he gave consent, verbally and by letter, to the city authorities to lay the water main. Its location over the premises was indefinite, only general approbation. Subsequently, Mr. Weichsel sold the acreage without reservation to a Mr. Lett, and in 1946 Mr. Lett sold the land to the I. & L. Development Company. At that time (each conveyance by warranty deed), neither Mr. Lett nor any one connected with the Development Company knew that the land was encumbered by the city's water main, or that the city had obtained an easement thereon; and certainly neither Mr. Weichsel nor Mr. Lett in the premises was guilty of any actionable fraud in so conveying the 20.66 acres to the I. & L. Development Company. After the acquisition of said land, the Development Company made a plat of the acreage, cutting it up into lots and blocks; laid out streets and alleys and erected 99 or more residences thereon. One of the lots was sold to Mr. Spradlin. In 1950, because of overstrain, leak or break in the pipe, water was caused to flow onto the surface of plaintiff's premises, resulting in the city's employees going thereon to make necessary repairs; and because of the unavoidable break, all parties to this suit, for the first time, became aware of the presence

of the water main. No negligence is assigned against the city or its employees in relation to the break.

Plaintiff's primary cause of action is directed against the I. & L. Development Company for $1,000 damages for breach of warranty in conveying to plaintiff the premises which were encumbered with the aforesaid water main easement of the City of Dallas; vouching into the suit in relation to said cause the Dallas Title & Guaranty Company on its title insurance policy, the Travelers Insurance Company to cancel its note and deed of trust, and against the City of Dallas to remove the main from the premises.

Plaintiff further directed his cause of action, if any he had against the I. & L. Development Company, that if he was not entitled to recover his damages aforesaid, then he was entitled to cancellation and rescission of the aforesaid contract and deed and for cancellation of the note and deed of trust of the Travelers Insurance Company; and then, too, if he was not entitled to cancellation and rescission, in the alternative, he seeks actual and exemplary damages against the I. & L. Development Company in the sum of $5,000 and $2,500 respectively for fraudulent representations of its agent and representative that the company was the owner of said premises.

In limine, on defendants' exceptions, the trial court struck from plaintiff's petition his pleading for the aforesaid $1,000 damages as resulting from the alleged breach of warranty; thus narrowed plaintiff's cause of action to a consideration for cancellation and rescission; and, in the alternative, for damages resulting from alleged fraudulent representations of the I. & L. Development Company, its agent and representative, that it was the owner of said property. Upon the defendant joining plaintiff's cause for rescission; and affirmatively pleaded, in defense, rescission along with tender in equity of all outlay paid by plaintiff, the plaintiff withdrew his cause for cancellation and rescission, thus again narrowed his suit for damages as relates to alleged actionable fraud in claiming ownership of the premises.

On the aforesaid state of the record, and over the defendants' exceptions and motions for instructed verdict, the trial court submitted the cause to a jury and on the uncontroverted facts as aforesaid related and the jury's findings, (1) Special Issue No. 18, that the reasonable market value of the property sold to Spradlin on November 20, 1946, if the city water main had not been in and upon the property, was $7,350, (2) Special Issue No. 19, that the reasonable market value of the lot conveyed to Spradlin on November 20, 1946, with the water main in and upon and under the same, was $4,040, and (3) Special Issue No. 20, that the present cash market value of the lot in question is $3,755, the trial court on motion non obstante entered judgment that the plaintiff take nothing by his suit.

■■■■ Appellant, by assignments and points of error, seeks to take this case for actual and exemplary damages within the provisions of Art. 4004, Vernon's Texas Civil Statutes, as relates to actionable fraud in real estate transactions on representations of an alleged agent and representative of the defendant I. & L. Development Company that the company had a good and indefeasible title to the premises which he purchased and obtained. This article was never intended to apply to breaches of contract. " * * * In order for Article 4004 to apply to a transaction in real estate the false promise must relate to something which is collateral, and not be the consideration of the very contract, for breach of which plaintiff sues." Long v. Humble Oil & Refining Co., Tex.Civ.App., 154 S.W.2d 925, 933, writ refused. "The gist of the fraud is deception as to an existing fact, * * *." Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118, 119. "Whether a representation as to title is actionable depends, of course, on the situation of the parties, the manner in which the representation was made and the knowledge and means of information of the parties. To constitute fraud, the person making the representation must have falsely stated or fraudulently concealed some fact material to the title. It is not fraudulent for a vendor to express his opinion as to the validity of his title if he conceals no facts and makes no false statements and does nothing to prevent a full examination. Especially is this the rule when the purchaser, on the advice

of the vendor, obtains the opinion of an attorney. Of course, to be actionable, the representation as to title must have been relied on." 20 T.J., p. 74, sec. 44. An unqualified expression of ownership is an affirmation of fact when made with respect to the purchaser's right to cancellation and rescission; but when such expression of title is merely an opinion of the vendor, free of deception and innocently made, constitutes only a right in the purchaser to rescind, with correlative right in equity for reimbursement of all outlay incident to the transaction. It is not fraudulent for a vendor to innocently express his opinion as to the validity of his title if he conceals no fact and makes no false statement and does nothing to prevent a full examination.

■ The following concept of law and equity was approved in Hawkins v. Wells, 17 Tex.Civ.App. 360, 43 S.W. 816, 818, writ refused: " 'If defendants honestly believed Campbell's title to be good, the statements made to plaintiff in regard to such title, in order to amount to a fraud such as would entitle plaintiff to recover, must have amounted to the positive assertion, as a fact, that Campbell had a good title; the statement must have been false; the plaintiff must have relied on it, and must have been induced thereby to make the deed conveying his 56 acres to Wells.' " So, in the case here, the record evidence reveals that no agent and representative of the I. & L. Development Company made any misrepresentation of a known fact which could constitute actionable fraud under the provisions of Art. 4004, for the reason that no one connected with the company knew that the water main was beneath the surface. Especially so, when all defendants acted honestly in the transaction, the defendants offered to cancel and rescind, and in equity tendered to Mr. Spradlin the full consideration paid, and deposited into Court the sum of $7,350 for the trial court's adjustment of the equities between the parties.

Plaintiff testified:

"Q. * * * Did I. & L. Development Company, or this man Maloney you were with, did he tell you the City had any kind of easement across the property, Mr. Spradlin? A. No, sir, he did not.

"Q. Did he say anything to you about any 36" water main under your property? A. No, sir.

"Q. Did he tell you that they were the owners of this Lot there? A. He did.

"Q. Now as a matter of fact during these negotiations with Mr. Joe Maloney, did Mr. Gay and Mr. Lett,—nothing was said about an easement at all, was there? A. No, sir.

"Q. The subject did not come up? A. No, sir.

"Q. During your negotiations they told you they would furnish title policy if you bought it? A. That is correct.

"Q. And that title policy from Dallas Title & Guaranty Company was furnished you? A. Yes, sir.

"Q. They made no specific representation to you about the property at all, did they? A. No, sir.

"Q. In other words, you looked at it, inspected it, didn't you, contracted to buy it on the grounds of what you saw? A. That is correct."

Mr. Sam Lett testified that he was a stockholder and president of the I. & L. Development Company. That the company had Joe Maloney working for it in the office, but not as a salesman. That the company had no knowledge of the water line being under the property when it was purchased, or prior to the time the main broke. Such testimony was uncontroverted—admitted fact.

We do not think the statements attributable to Mr. Maloney could be construed as a statement of facts about which he knew nothing. Such relates to questions of law as to the extent of what the company owned and passed by the deed and could only be construed as an expression with reference to a matter well known to Mr. Spradlin, as it was to himself or any one connected with the transaction. It is not claimed that either of them knew anything about the title being encumbered with the city's water main, and certainly Mr. Spradlin did not re-

ly on the statements of Mr. Maloney as an inducement for the purchase of the property. Then, too, the I. & L. Development Company having contracted to furnish Mr. Spradlin with an insurance policy guaranteeing the title to the premises as reflected in the deed, and the policy having been given and accepted by Mr. Spradlin, he may not gainsay he relied on any verbal representation, or general warranty deed of title as evidencing fraud. The representations of Mr. Maloney to the effect that the Development Company was the owner of the property were no more than an expression of opinion which would not sustain an action for fraud. Corbett v. McGregor, 62 Tex.Civ.App. 354, 131 S.W. 422, writ refused. That there is no actionable fraud, is evident; all parties to the transaction having equal opportunity to know and ascertain the status of the title. And the plaintiff having suffered his cause for breach of the covenant of warranty in the deed against the I. & L. Development Company being eliminated on the court's action in sustaining the defendants' exception; and having withdrawn his plea for cancellation and rescission, thus resting his suit only for actionable fraud, the judgment of the trial court should be affirmed, and it is so ordered.

CRAMER, Justice.

I respectfully dissent from the disposition of this case by the majority. The jury in answer to special issues found, material to this dissent, in substance that: " * * * The I. & L. Development Company represented to Spradlin that they were the owners of Lot 40, Block B, Cherrywood No. 2 Addition to the City of Dallas, and that there was no outstanding title or claim against the property * * * "; that Spradlin relied upon the representation and was thereby induced to purchase the property; that he was without notice or knowledge of the 36-inch water main across said lot on November 20, 1946; that the statement made by representative of the I. & L. Development Company was false, but that the

Development Company was of the opinion it was the owner at the time of the sale and expressed such opinion to Spradlin in good faith at the time it sold the property to Spradlin; that the presence of such water main was not visible so as to reasonably apprise persons in general of its presence under said lot; that its presence was not known to Spradlin; that the City of Dallas issued a permit to I. & L. Development Company to construct a residence on said lot at a location on said lot over its water main, which was negligence and proximate cause of the depreciation in value of the property; found that the market value of the property on November 20, 1946, the date of Spradlin's deed, without the city easement, was $7,350, and with the easement, $4,040; that its value at time of the trial, with the easement, was $3,733.

It is the writer's opinion that on this verdict the court should have entered judgment for Spradlin against the I. & L. Development Company for $3,310 as prayed for by Spradlin in his motion for judgment on the verdict, and that the trial court's failure to do so was error. Zavala Land & Water Co. v. Tolbert, Tex.Civ.App., 184 S.W. 523, error refused; Old National Life Ins. Co. v. Bibbs, Tex.Civ.App., 184 S.W.2d 313, error refused w+m.; Stowe v. Wooten, Tex.Com.App., 62 S.W.2d 67, 68, by the Commission of Appeals.

In the Stowe case the Commission of Appeals stated: "It is the settled doctrine in this state that in actions for fraud a person is responsible to the party deceived for what he represents to be true, regardless of his lack of intent to deceive." Citing numerous cases to sustain that holding.

The general rule as set out in the Stowe case applies here; not Article 4004, R.C.S., which applies where the fraud is active and intentional, justifying exemplary damages.

For the reasons stated, the judgment below should have been reversed and here rendered for appellant against I. & L. Development Company for $3,310 plus interest and costs.