rubbed, my opinion is, before the indorsement was put on it." This is signed by the judge without qualification. Several authorities are cited by appellant in support of this proposition. Tyler v. State, 11 Tex. App. 388; Knoll v. State, 55 Wis. 249, 12 N. W. 369, 42 Am. Rep. 704; Commonwealth v. Webster, 5 Cush. (Mass.) 295, 52 Am. Dec. 711.

It is shown by another bill that, while the witness Lowe was on the stand testifying for the state, he was shown a memorandum in writing, which he identified as a letter of advice from the First National Bank of Ft. Worth, which the First National Bank of Silverton had received on November 23, 1909, and after such identification the state offered the letter of advice in evidence for the purpose of showing that a certain check for $73.60, which had been introduced by the state as the check defendant testified he gave for the bale of cotton in controversy, and which showed upon its face to have been cashed by the First National Bank of Silverton on November 23, 1909, and also to have borne the stamp of the First National Bank of Ft. Worth, and forwarded by the First National Bank of Ft. Worth to the First National Bank of Silverton for collection, to which letter of advice the defendant objected as to its admission in evidence, because it was not sworn to, and was hearsay as to this defendant, which objections were by the court overruled, and the letter of advice, with all of its contents, etc., was introduced. Among other things on the letter, after setting out the items in the letter of advice, we find this: "We inclose for collection and credit items as listed. Deliver papers only upon payment of draft $15.00 and under no protest. Yours truly, T. W. Slack, Cashier. Items marked X no protest. M. B. Loyd, Pres., R. D. Gage, V. Pres., W. E. Connell, V. Pres., T. W. Slack, Cashier, H. I. Gahangan, Asst. Cash., The First National Bank, Fort Worth, Texas." This was a matter occurring between third parties on what was thought to be a vital issue in the case, purely hearsay as to defendant, and not in any way binding upon him, and not proved to have been written by the parties. In fact, it was a matter occurring between third parties, and not connected up so as to show it was evidence against this defendant. He had nothing to do with it. It was a matter occurring between the other parties.

[11] Another bill in this same connection shows that, while the witness Lowe was testifying, he stated that he was working for the First National Bank of Silverton during November, 1909, and that Mr. Turner Stephenson was doing the book work for said bank, and that from his own knowledge and personal recollection he did not know whether a check for $73.60 of the defendant J. A. Davis was cashed in November, 1909, or not, and that he was testifying solely from the books, and that his testimony was based upon memorandum taken from the books and the letter written to them by the First National Bank of Ft. Worth, and he was asked whether or not the instrument of writing held in his hand was the letter of advice from the First National Bank of Ft. Worth, received by the First National Bank of Silverton on the 23d day of November, 1909, and whether or not same contained any check of defendant. Appellant objected, because the letter of advice from the First National Bank of Ft. Worth was hearsay, was unsworn, and was secondary evidence. This was overruled, and the witness answered to the foregoing that there was a check of the defendant for $25 received from the First National Bank of Ft. Worth on that date, and read as follows, after setting out several items: "We inclose for collection and credit items as listed. Deliver papers only upon payment of draft $15.00, and under no protest. Yours truly, T. W. Slack, Cashier." These matters are all in the same class, and as presented we are of opinion they should not have gone to the jury.

There are other questions arising in the case, but what has been said sufficiently disposes of those not discussed. The court will understand the view as taken of the case in this opinion.

For the errors discussed, the judgment is reversed, and the cause is remanded.

---

KIRBY v. THURMOND et al.

(Court of Civil Appeals of Texas. Dallas. Jan. 11, 1913.)

1. PLEADING ($ 214*)—CONTENDMENT.

The allegations of a petition are taken as true on demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

2. EVIDENCE (§ 434*)—SALES (§ 38*)—FRAUD—PAROL EVIDENCE.

A written contract for the sale of a stock of goods, though expressly providing that the seller did not warrant quantity, may be set aside for the seller's fraudulent misrepresentations as to quantity; the action sounding in tort, and the admission of evidence of such representations not violating the parol evidence rule because, owing to fraud, the contract never had any binding force.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. § 434;* Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. § 38.*]

Error from District Court, Dallas County; J. C. Roberts, Judge.

Action by W. J. Thurmond and others against W. S. Kirby, in which defendant cross-complained against plaintiff and the surety on plaintiff's injunction bond. There was a judgment for plaintiff and his surety, defendant's cross-complaint being denied, and defendant brings error. Affirmed.

Etheridge & McCormick, of Dallas, for plaintiff in error. Brooks & Worsham and Seay & Seay, all of Dallas, for defendants in error.

RAINEY, C. J. This suit was instituted by the defendant in error W. J. Thurmond against the plaintiff in error by the filing of an original petition, which was amended on November 9, 1911, charging fraudulent misrepresentations in the sale by way of a trade of a farm for a stock of drugs, and praying for a rescission and injunction, and in the alternative for damages. A temporary injunction was issued, and the defendant in error American Bonding Company executed the injunction bond. The defendant, Kirby, having theretofore answered, on November 3, 1911, filed his third amended original answer, consisting of exceptions to the plaintiff's pleading, a general denial of his allegations, a cross-action against the plaintiff for damages for fraudulent representation, and a plea against the bonding company for damages occasioned by the suing out of the injunction. The court, after passing on the exceptions and hearing the testimony, submitted the case to a jury, which returned a verdict, in effect, in favor of defendant in error Thurmond for $1, and against plaintiff in error, Kirby, on his plea for damages, and in favor of the American Bonding Company, defendant in error.

The first error assigned is the overruling of exception No. 5 to plaintiff's petition, which reads: "Defendant specially excepts to said petition for that it therefrom manifestly appears that this defendant, during the negotiations for the trade, declined to give publicity to its pendency by the taking of an inventory, and that upon the contrary this defendant, during such negotiations, expressly stated to the plaintiff that he could not and would not warrant the amount of goods on hand, and that the defendant did not know, and could not with certainty know, the amount of goods then on hand, and because, from the allegations of said petition, it manifestly appeared that the plaintiff, in consummating the negotiations for the trade, did so with full knowledge that this defendant declined either then to take an inventory or then or thereafter to warrant the amount of goods on hand, and plaintiff consummated such negotiations for the trade, acting in the light of such facts, and of all this defendant prays judgment," etc.

The allegations of plaintiff's petition, pertinent to a consideration of said assignment relating to misrepresentations on the part of defendant, are:

"Appellee alleged that at the time of the making of said contract and the acceptance of said bill of sale, and for the express purpose of inducing him to execute said six notes and the transfer, appellant represented that said stock of drugs, druggist sundries, etc., were in a good and merchantable condition, and that the whole stock, including said fixtures and soda fountains, would, at the time of said transfer and conveyance, invoice about $54,000 in value; that the last inventory taken by him, which was on January 1, 1909, showed the aggregate value of said stock, fixtures, soda fountains, etc., to be a little in excess of $48,000; that since said inventory was taken he (appellant) had purchased and placed in said stock other goods, wares, and merchandise, which did not appear therein, aggregating the sum of $5,000 or $6,000 in value; that the appellant, before said contract of sale was made and accepted, and before said deed, notes, and transfers were executed, exhibited to appellee a book or books which purported to be the said inventory alleged to have been taken by him on January 1, 1909; that said books showed the aggregate value of said stock as it then stood to be in excess of $48,000; and that appellant then stated and represented to appellee that the merchandise therein comprised, together with the fixtures and furniture, was of the reasonable market value of $48,000.

"Appellee further alleged that pending the consummation of said contract, and while he was negotiating with one D. E. Waggoner, a banker in the city of Dallas, for a loan of $15,000 with which to meet the cash payment demanded by appellant, he (appellant) knowing that D. E. Waggoner contemplated making the loan and taking a lien or mortgage on said fixtures and furniture as security, and knowing of the relations existing between them, and for the purpose of having his statements and representations made to the said Waggoner, with reference to the invoice value of said stock, repeated to appellee, appellant stated and represented to said Waggoner that said inventory taken by him on January 1, 1909, showed the aggregate value of said stock of drugs, fixtures, etc., to be in excess of $48,000, and that, since the taking of said inventory, he (appellant) had purchased and placed in said stock other goods of the aggregate value of $5,000 or $6,000, which did not appear and was not included in said inventory, and which would make the invoice value of said stock, as it then stood, about $54,000.

"Appellee further alleged that said Waggoner conveyed the information respecting the invoice value of said stock so received by him from appellant to appellee before his acceptance of the terms of said contract, and that he was induced thereby to make and enter into said contract.

"Appellee further alleged that, before making and entering into said contract, he specially requested appellant to make an inventory of said stock, and that he declined to do so or to permit same to be done, stating, as his reason, that, if the sale was not consummated, his business would be greatly injured by the publicity that would result from an unsuccessful attempt on his part to dispose

of same; that appellant further said that the inventory taken by him on January 1, 1909, was absolutely correct, as it stood and represented the reasonable cash market value of said stock; that since same was taken, and during the year 1909, he had purchased and placed in said stock other goods and merchandise to the aggregate value of $5,000 or $6,000; that he could not warrant, and in said bill of sale would not warrant, the exact amount of goods on hand at the time of the purchase, because he did not know with certainty, and could not know without an inventory, the exact amount of goods purchased since the last inventory, the one dated January 1, 1909; that thereupon appellant again exhibited to him the total value of said merchandise, fixtures, etc., as it appeared thereon and as it appeared in appellant's ledgers and books of account, which were then and there exhibited; that appellant then and there stated and represented to appellee that the value of the articles of merchandise comprising said stock, as shown by said inventory and the entries on his ledgers and books of account, were the reasonable cash market value, at jobber's discount prices, of each and every item therein contained; that it appeared from said inventory and books of account that the value of said stock of merchandise, fixtures, etc., at the time same was taken was in excess of $48,000; and that, relying thereon, he accepted said bill of sale and executed said deed, notes, and transfers.

"Appellee further alleged that a part of the goods embraced in said stock was in bulk and contained in closed boxes and cartons stored on the second floor of the building, which was poorly lighted, and that the quality and quantity of said goods could not be ascertained without opening each and every such box, carton, etc.; that same were sealed or closed and their contents not open to view; that appellant then and there stated and represented to appellee that each one of said boxes was filled with good and wholesome merchandise, drugs, drug sundries, etc., and for that reason the whole stock was of much greater value and would inventory a much larger sum than would appear from a mere cursory examination; that appellee then and there advised appellant that he had had no experience as a retail druggist, and that he did not know, and had no way of knowing, the value of said stock or what the same would invoice or the character of merchandise contained in said cartons, boxes, etc.; and that he would have to rely, and did rely, in making said purchase upon his (appellant's) statements and representations with reference thereto.

"Appellee further alleged that he believed and relied on as true the statements made by appellant with reference to the character and value of said stock on January 1, 1909, as shown by the inventory of that date exhibited to him, and as to the additional purchases made by him during the year 1909, and the statements and representations made by appellant to D. E. Waggoner as to the character and value of said stock shown by said inventory, and as to the purchases made during the year 1909, and on the statements and representations made by appellant that said stock was in a good and merchantable condition and that each and every carton, box, jug, etc., was filled with good and merchantable goods; and that, believing each and all of said statements and representations to be true and relying thereon, he purchased said stock and accepted said bill of sale. Appellee then alleged that each and all of said statements were false and untrue; that they were by appellant known to be false at the time they were made; that they were made by him for the fraudulent purpose of inducing appellee to act thereon and to accept the terms of said bill of sale; that appellee did believe same to be true and did rely thereon, and was induced thereby to accept said bill of sale, to his great damage.

"Appellee further alleged that the inventory dated January 1, 1909, was grossly incorrect, false, and untrue, and that appellant fraudulently compiled, or had same compiled, for the fraudulent purpose of making the sale of said stock to appellee or some unknown person at an amount far in excess of its reasonable cash value, and alleged that at no time during the last seven years of appellant's ownership of said stock, fixtures, etc., and conduct of said business, had said stock, fixtures, etc., exceeded in value the sum of $26,000, and that at list prices the actual and reasonable cash market value of said stock of drugs, together with the fixtures and furniture and soda fountains, on January 1, 1909, did not exceed the sum of $26,000, and that their reasonable cash market value did not exceed the sum of $15,000; that same was known to appellant at the time said inventory was compiled and at the time said false and fraudulent representations were made to appellee.

"Appellee further alleged that at the time said representations were made, and at the time said contract was consummated, the list price value of said stock of goods, fixtures, and furniture did not exceed the sum of $20,000, and that their reasonable cash market value did not exceed the sum of $15,000; that the cartons, boxes, jugs, etc., which were represented to be filled with good and wholesome drugs, were empty or only partially filled, so that the stock was worth less by $3,478.58 than it was represented; and that the proprietary medicines embraced in said stock were manufactured prior to the enactment of the pure food law, and were not in conformity therewith, and were nonmerchantable, on which account said stock was worth less by the sum of $1,462.20 than represented to be."

Attached to the petition as an exhibit was

the bill of sale for the stock of drugs, which contains this language: "It is understood that said stock is sold as it now stands, and the grantor does not warrant as to quantity." The proposition is made that the clause in the bill of sale, being "put therein to the knowledge and by the intention of both parties, is inconsistent in law with a right in Thurmond to recover on alleged misrepresentations as to condition or quantity." The second proposition is that "it is not alleged that Thurmond did not know that the contract, as reduced to writing, contained a term by the force of which he agreed to take the stock as it stood at the time of the sale, and another that the grantor did not warrant as to quantity. When he accepted the bill of sale containing these terms, and, knowing they were there, assented to them, they became contractual and a part of the consideration, and he could not then say that he had relied on representations that the stock which he had examined, and had full opportunity to examine, was different from as it stood, nor on statements that the quantity was greater than he found when he took the stock over. These so-called fraudulent misrepresentations were by the contract 'withdrawn as representations, and could not be relied on in closing the trade."

[1, 2] Allegations of a petition are taken as true when considering a demurrer thereto. It was alleged that plaintiff was induced by fraudulent misrepresentations to enter into the contract of purchase, and but for such misrepresentations he would not have done so, stating what the misrepresentations were, and that they were made willfully and with intent to deceive, etc., were sufficient to state a good cause of action, and, if proven, warranted a verdict by the jury. The provision in the bill of sale that "it is understood that said stock is sold as it now stands, and the grantor does not warrant as to quantity," does not preclude plaintiff from showing that he was induced to make the trade and, in so doing, relied on the representations of the defendant. This does not violate the well-known rule that parol evidence is not admissible to contradict or vary the terms of a written contract, as the action in this case sounds in tort and not in contract. French v. Nolan, 38 Tex. Civ. App. 395, 85 S. W. 821; Rhode v. Alley, 27 Tex. 443; Ranger v. Hearne, 37 Tex. 30; Id., 41 Tex. 258; Davis v. Driscoll, 22 Tex. Civ. App. 14, 54 S. W. 43; Routh v. Caron, 64 Tex. 289. Fraud on the part of defendant having been alleged, the representations and circumstances surrounding the transaction as alleged were such that it was a question for the jury to determine whether or not plaintiff was justified in signing the contract, believing that the representations made by plaintiff were true. Fraud vitiates contracts, and, if plaintiff perpetrated a fraud that induced defendant to make the trade and sign the contract, it is not binding.

In the case of Davis v. Driscoll, supra, Mr. Justice Fly, quoting from Mr. Greenleaf, says: " 'This rule is not infringed, however, by the admission of parol testimony showing that the instrument is void, or never had any existence or binding force, either by reason of fraud, or for want of the execution and delivery, or for the illegality of the subject matter.' " Id. § 284. He then says: "It follows, then, that, if the proof tended to establish fraud upon the part of appellant in inducing the execution of a contract, the evidence was admissible. It is well settled in this state that it is competent to prove fraud, although the written contract is silent on the subject to which the fraudulent representations refer. Mitchell v. Zimmerman, 4 Tex. 75 [51 Am. Dec. 717]; Henderson v. Railroad Co., 17 Tex. 560 [67 Am. Dec. 675]; Rhode v. Alley, 27 Tex. 443; Ranger v. Hearne, 41 Tex. 258."

We are of the opinion that the petition stated a good cause of action, and there was no error in the court overruling all the demurrers, both general and special. The petition stating a good cause of action, as heretofore held by us, there was no error in refusing the charge requested by defendant, which in effect instructed a verdict for defendant, of which ruling he complains. There is no statement of facts in the record, and we presume all necessary facts were sustained by the evidence.

The judgment is affirmed.