### LONG v. HUMBLE OIL & REFINING CO.

#### No. 10943.

Court of Civil Appeals of Texas.   Galveston.

Nov. 14, 1940.

Rehearing Denied Oct. 23, 1941.

Adams, Hart & Daughtry, of Beaumont, for appellant.

E. B. Pickett, Jr., of Liberty, A. W. Marshall and Guy C. Jackson, Jr., both of Anahuac, and K. W. Gilmore and D. H. Gregg, both of Houston (E. E. Townes and R. E. Seagler, both of Houston, of counsel), for appellee.

CODY, Justice.

The sole question on this appeal is the sufficiency of the allegations in plaintiff's petition as against a general demurrer, to state a cause of action against defendant. For this is an appeal from a judgment dismissing appellant's suit, after appellant refused to further amend. And, as we are here dealing with the allegations of the petition, it seems appropriate to designate appellant and appellee in this opinion as they were designated in the pleadings below.

It is plaintiff's contention that his petition states two causes of action, one being a cause of action for damages ex delicto, being pitched under Article 4004, R.S.1925, based upon fraudulent promises; the other being an action for reformation of contract, and for damages for breach of the contract up to day of judgment, and for specific performance of such contract thereafter.

As the petition is quite lengthy, covering ninety odd pages of the transcript, only the substance of its allegations can be given.

The allegations of paragraph II are to the effect that on August 20, 1929, plaintiff and defendant made a contract of the character thereafter alleged in paragraphs III and IV of plaintiff's said petition. The authority of R. B. Cooper to act for defendant in connection with making such contract is

fully alleged. The allegations of paragraph III are to the effect that at and before the making of said contract, defendant desired to obtain a block of oil, gas and mineral leases on some forty thousand acres of land in Chambers County, in the area now known as Anahuac Oil Field; and defendant desired plaintiff to get up such block of leases for it, the leases to be those known to the trade as "selection type", to be taken in plaintiff's name, but on defendant's form of selection type lease, having defendant's form of selection agreement incorporated therein. That plaintiff was to procure such leases at a cost to defendant of not more than 50 cents per acre. Such leases were to run for a term of six months, within which term defendant should make a thorough geophysical test of the acreage. And with respect to the acreage which was to be selected as a result of the contemplated geophysical tests, it was to be provided that the down payments should not exceed $7.50 per acre for the first six months (following the selection), and the annual rentals should not exceed $5, the primary term to be five years. It was agreed and understood that the 50 cents per acre down payment which was to be made plaintiff to obtain the "selection type" leases on the 40,000 acres covered the bare expense of obtaining such leases, and that plaintiff's compensation should consist of an overriding royalty reserved by him in his assignments of the leases to defendant. That such overriding royalty was the sole consideration which the parties plaintiff and defendant contemplated moved from defendant to plaintiff for his performance of the contract. And that, when plaintiff had procured and assigned said leases to defendant it was agreed that defendant should thereupon diligently prosecute its geophysical exploration of the lands covered by said leases, and make a test of said lands. And that, in such connection, defendant should in good faith exercise its contractual right of selecting the acreage which the aforesaid geophysical tests indicated were probably oil bearing, and would act fairly in selecting and rejecting such indicated oil bearing lands, and thereby protect the interest moving to plaintiff as consideration, etc.

In paragraph IV of plaintiff's petition, it is alleged that the agreement should be partly oral and partly in writing; that the part which was to be in writing should be incorporated in the assignments of the leases from plaintiff to defendant. That the over-

riding royalty provision which it was agreed to be incorporated in the assignments, and which should be binding between the parties, should be as follows: "Assignor herein expressly reserves to himself his heirs and assigns, the equal one-forty-eighth (1/48th) part of all oil which may be produced and saved by Humble Oil & Refining Company, its successors and assigns, from the land affected hereby under and by virtue of the lease above mentioned, delivery of such oil to be made free of cost to the credit of assignor into storage tanks by him provided, or into the pipe line to which the wells on said premises may be connected. On dry gas, or casinghead gas, when marketed from said premises, assignor shall be paid one-forty-eighth (1/48th) of twenty five per cent (25%) of the value of the recoverable gasoline contained therein as shown by periodic tests for gasoline content, and meterings for volume, said value to be determined as the average of all high and low quotations for gasoline of the grade and quality manufactured at the plant in which said gas is utilized, as shown in the market section for the territory in which said lease is situated, published weekly in the National Petroleum News during the month for which settlement is made. Fuel oil and gas for operating the premises, and for treating and handling products therefrom (and the proportionate part of fuel oil and gas consumed in a central plant, should this lease be operated jointly with other premises through the use of such plant) shall be deducted before said royalties on oil and gas are computed. Assignor reserves an overriding royalty on sulphur equal to ten (10¢) cents per long ton of 2240 pounds on all sulphur mined and marketed from said premises."

And that the agreement that when plaintiff had delivered the leases to be obtained as aforesaid, defendant should make the geophysical exploration and fairly select leases which covered the lands indicated to be oil bearing, and reject only the leases indicated not to be oil bearing, was oral. And the agreement of defendant to keep the leases in force on lands indicated to be oil bearing was also oral. And it was further orally agreed that defendant should notify plaintiff in writing of the leases which it would thus keep in effect, and also that defendant would drill a test well in the lease block, and if the well was productive of oil, gas, or other minerals, defendant would continue to develop said properties with reasonable diligence.

In the following paragraph of plaintiff's petition, being paragraph V thereof, it is alleged that the contract as alleged in paragraph IV of the petition, constituted the real agreement between plaintiff and defendant, but that it was understood that defendant did not wish the oral provisions of the agreement to be placed in writing in the assignments of the leases for reasons of its own (which were specified) and that in lieu of writing into the assignment the provisions which were orally agreed upon, the defendant desired and required the following provision to be written therein:

"It is expressly agreed that neither Humble Oil & Refining Company, nor its successors and assigns, shall be under any obligation, against its or their will, either to preserve the leases by rental payment or to operate on said premises for the discovery, development or production of oil, gas or sulphur; but all such rental payments and operations and the extent and duration thereof, as well as the preservation of the leasehold shall be solely at the will of Humble Oil & Refining Company, its successors and assigns."

That defendant acting through R. B. Cooper, represented to plaintiff at the time of entering into the contract that though the defendant wanted the provision, just set forth immediately above, incorporated into the assignment, nevertheless it expressly agreed that said provision should constitute no part or portion of the real agreement between itself and plaintiff, but that the contrary provisions of the oral agreement should be the only real agreement between the parties relative to the matters covered by said oral agreement. And that plaintiff was thereby induced to execute the assignments of the leases to accord with defendant's requirements and demands, but the actual agreement was as alleged and not as indicated in the provision copied hereinabove which is contrary to the real agreement.

In paragraph VI, it is alleged that defendant made the oral agreements alleged, as material inducements to plaintiff to enter into the contract, as aforesaid, and but for which promises, plaintiff would not have entered into said contract; that at the time plaintiff executed and delivered said contract he believed all the promises and statements then and there made by defendant through its authorized agents; relied upon said promises and believed that same were made in good faith; "that said promises were at the time made by defendant and its agent false and fraudulent and every and all of them were made as material inducements to persuade plaintiff to enter into said contract and that said false and fraudulent promises, agreements and undertakings were in fact material inducements such as did actually persuade and cause plaintiff to enter into said contract and faithfully to perform his obligations thereunder, * * *; that but for said false and fraudulent promises and undertakings on the part of the defendant, plaintiff would not have entered into said contract; that defendant, at the time of making said false promises and entering into said agreements did not intend to perform them, but, on the contrary, then and there had the deliberate and wilful intention of not performing them, except only with respect to its making the geophysical exploration of said lands, as contemplated and provided for in the contract, and which said geophysical exploration it did actually make as hereinafter shown.

"Wherefore, plaintiff is entitled to have his said contract, as set forth in his assignments of said leases to defendant, reformed by the complete elimination of all that part of said written assignments as shown and copied verbatim in paragraph V, as aforesaid, and in lieu thereof the substitution" of the oral agreements, which constituted the real agreements between the parties, "to the end that the said assignments and contract, as thus reformed may state and reflect the actual agreement originally entered into between plaintiff and defendant, in accordance with the foregoing allegations."

Paragraph VII alleges full performance by plaintiff of his obligations under the contract.

Paragraph VIII alleges that defendant performed so much of its obligations as required it to make a thorough geophysical exploration of the lands covered by the leases assigned to it by plaintiff, and that it thereby located a dome or structure in the territory covered by the leases which indicated the presence of oil and gas in paying, and probably in enormous, quantities.

Paragraph IX alleges that notwithstanding the facts alleged in paragraph VIII, that defendant deliberately, wilfully and fraudulently failed to exercise its selection privileges, but for the purpose of deceiving plaintiff and the land owners in the

territory, dropped and forfeited the leases in furtherance of its plan of deliberate deception.

Paragraph X alleges that about the first of May, 1930, plaintiff was informed that the geophysical tests failed to indicate the presence of any oil, and for that reason defendant failed to make any selection; that said statement was false, and deliberately made for the purpose of deceiving plaintiff, and that he was deceived.

Paragraph XI alleges that in July or August of 1936, plaintiff for the first time learned that defendant had in fact discovered, by its geophysical exploration the probability of potential oil bearing land covered by the leases assigned to it by plaintiff. (These allegations go into great detail and circumstance, including allegations to the practical effect that Cooper admitted deception had been practiced on plaintiff and ,that defendant had at all times, after its exploration, after forfeiting said leases intended to re-acquire leases on the lands, and develop them.) Plaintiff alleges that defendant reacquired leases covering a part of said lands, and that plaintiff then filed suit promptly, that is, on December 8, 1936.

Paragraph XII alleges that defendant actually discovered the structures indicating the presence of oil in paying quantities in late 1929, and early 1930, while holding leases under assignment from him, and in pursuance of the contract with him.

By paragraph XIII, plaintiff alleges that the defendant, at the very time it made the "false promises and agreements aforesaid, intended not to perform them and made them without any intention of performing them, except in the respects heretofore alleged, is sufficiently supported and said issues reasonably proved by the following facts and circumstances, to-wit:" (Then follows a listing covering several pages).

The allegations of paragraph XIV are copied verbatim:

"As a direct and proximate result of the frauds and of the fraudulent breaches of contract of defendant as aforesaid, plaintiff has sustained great actual damages, and by reason of the premises is entitled to the following legal and equitable relief:

"1. To specific performance of said contract by defendant and to judgment compelling defendant to convey to plaintiff by proper instruments the said one-forty-eighth royalty of all the oil and gas, etc., in accordance with the said reservation clause of plaintiff's assignment of the leases and his contract, as set forth in Exhibit B, attached to and made a part of this petition, and to judgment for specific performance as aforesaid:

"2. As a part of such specific performance and supplementary thereto, plaintiff is entitled to judgment for the reasonable value and the reasonable market value of one-forty-eighth (1/48th) royalty of all oil and gas which defendant has already produced and will in the future produce up to the date of judgment herein from and under the leases and tracts of land as described in Exhibit D; and plaintiff alleges on information and belief' that the reasonable market value and the reasonable average market value of such one-forty-eighth (1/48th) royalty of all the oil and gas thus produced and such as will be produced up to the trial hereof as aforesaid was and is, at the time produced, the sum of One & 50/100 ($1.50) Dollars a barrel and of the total value of Five Hundred Thirty Thousand Dollars ($530,000.-00); but that plaintiff does not know the exact amount of such production and that the original records thereof are all in defendant's exclusive possession and control;

"3. In the event plaintiff be not entitled to specific performance of said contract and to recover his said specific reserved one-forty-eighth (1/48th) royalty interest, then, in the alternative, he alleges and shows unto the court that he is entitled to recover the reasonable value and the reasonable market value of his said one-forty-eighth (1/48th) royalty interest in and to all of said leases and tracts of land described in Exhibit D, and that the reasonable market value thereof at the time defendant committed said frauds, breaches of contract and negligences, and continuously down to the trial hereof was, and has at all times been, and is now, the sum of Five Million Dollars $5,000,000.00."

By paragraph XV, it is alleged that defendant is in possession of and drilling and operating and continually producing oil and gas from certain described lands, which were covered by leases assigned to defendant by plaintiff, and that defendant has been and is appropriating plaintiff's one-forty-eighth (1/48th) royalty interest therein. (The petition then sets forth how much oil of plaintiff's, included in the aforesaid overriding royalty, defendant has appropriated and its value, and how much will be appropriated and its value.)

The allegations of paragraph XVI are copied verbatim:

"In the alternative, plaintiff is entitled to recover of defendant the reasonable market value of his said reserved interest, same being the consideration inducing him to enter into the said contract and to perform his obligations thereunder, as set forth in the said assignments of the leases as shown in paragraph 1 of Exhibit B, which is attached hereto and made a part of this petition; and that the reasonable market value of all the said reserved one-forty-eighth royalty interest is the sum of Five Million Dollars ($5,000,000.00). In the alternative, plaintiff sues for and is entitled to recover the difference between the value or the reasonable market value of plaintiff's said interest in the condition it was delivered to plaintiff (or as reserved by him in the said assignments of the leases) at the time of the contract and at the various times of the assignments of said leases and what the said value or the reasonable market value of said interest would have been if defendant had fulfilled its promises; that the said value thereof at the time of its delivery to plaintiff (or as reserved by him in the said assignments of said leases) was probably not more than the sum of Five Hundred Dollars ($500.-00), if that much, that it probably had no market value or reasonable market value, and that it had only a possible speculative market value of Five Hundred Dollars ($500.00) as aforesaid; but that the value or the reasonable market value of said interest, if defendant had faithfully performed its said promises to plaintiff, would have been and is the sum of Five Million Dollars ($5,000,000.00)."

The allegations of paragraph XVII are copied in full:

"In addition to the actual damages aforesaid, plaintiff is entitled to recover exemplary or punitive damages based upon the false promises made by defendant and its authorized agent, Cooper, who wilfully made the said false promises and representations aforesaid, and 'knowingly took advantage of said frauds,' whereby the defendant becomes and is legally liable under Article 4004 of the Revised Civil Statutes of Texas in exemplary damages to plaintiff as the person defrauded in such amount as may be assessed by the jury, not to exceed double the amount of the actual damages suffered by plaintiff, as a direct and proximate result of said fraud and false promises, to-wit, in such amount of exemplary damages, not to exceed Ten Million Dollars ($10,000,000.00)."

The prayer of the petition is copied verbatim:

"Wherefore, defendant, Humble Oil & Refining Company, having already been duly cited by due service upon it of original citation, to which was attached a certified copy of plaintiff's original petition, and defendant having answered thereto, and the said defendant having also been duly cited on plaintiff's first amended original petition by due service upon it of citation, to which was attached a certified copy of plaintiff's first amended original petition, which said service of citation was made on March 3, 1938, plaintiff prays as follows:

"1. That plaintiff have judgment duly reforming the contract in every and all of the respects aforesaid, so that said contract as reformed shall be and read verbatim as shown in Exhibit B;

"2. That plaintiff have judgment requiring the defendant specifically to perform the said contract as reformed and judgment requiring defendant to convey to plaintiff his interest as expressly shown and reserved in paragraph designated 1 of the said reformed contract, as set out in Exhibit B;

"3. Plaintiff prays judgment for the reasonable market value of one-forty-eighth (1/48th) of all oil produced and saved by defendant from every and all of said tracts of land and leases up to the date of this judgment in the sum of Five Hundred Thirty Thousand ($530,000.00) Dollars, and for interest thereon at the rate of six per cent from the respective dates of production;

"4. In the alternative, plaintiff prays for judgment against defendant for the value and the reasonable market value of the total of his reserved interest representing the consideration moving to him in the said contract, as shown in paragraph 1 of his assignments of the leases to defendant, and as shown in Exhibit B; which said reasonable market value is the sum of Five Million Dollars ($5,000,000.00);

"5. Plaintiff further prays for exemplary damages based on the fraudulent promises made by the defendant and its authorized agents with the intention then and there of not performing them, under and in accordance with the provisions of Article 4004 of the Revised Civil Statutes of

Texas, in double the sum of the actual damages represented by the market value of said interest, to-wit, for exemplary damages in the sum of Ten Million Dollars ($10,000,000.00) ;

"6. Plaintiff further prays that this Honorable Court enter an order requiring the defendant to prepare under oath and render into court in this cause before the trial hereof a full and accurate accounting of all the oil produced by the defendant from every and all of said leases showing the dates of production and the market prices on said dates and the total market price and value thereof;

"7. Plaintiff further prays that the court enter an order requiring, directing and commanding the defendant and its authorized agents to produce in court at the trial of this cause every and all of the instruments particularly described in Exhibit E and numbered consecutively from 1 to 32, inclusive, whose production in court has been heretofore demanded by written notice to defendant, as alleged in the foregoing petition;

"8. Plaintiff further prays for all costs of court and for such other relief, both general and special, to which he may be entitled at law or in equity, under the pleadings and the evidence."

In passing upon a general demurrer the court must, of course, consider the allegations of the petition as having been established as true. Kirby v. Thurmond, Tex.Civ.App., 152 S.W. 1099. And when this is done it is clear that plaintiff failed to state any cause of action entitling him to reformation of contract. The allegations of the petition which are controlling on this point are to the effect that the agreement between the parties was to be partly oral and partly in writing. It is alleged just what terms should be oral, and just what terms should be in writing. And according to the petition's allegations it was the intention of the parties that this written provision was to be included in the assignments of the leases to defendant;

"It is expressly agreed that neither Humble Oil & Refining Company, nor its successors and assigns, shall be under any obligation against its or their will, either to preserve the leases by rental payment or to operate on said premises for the discovery, development or production of oil, gas or sulphur; but all such rental payments and operations and the extent and duration thereof, as well as preservation of the leasehold shall be solely at the will of Humble Oil & Refining Company, its successors and assigns."

The rule as to reformation of a written contract is thus stated by Williston on Contracts, § 1549, Vol. III:

"The province of reformation is to make a writing express the bargain which the parties desired to be put in writing. Agreements of which they did not desire written expression will not be put into writing by decree of the court. Therefore, if parties intentionally make an oral agreement which is unenforceable for the reason that it is not in writing, the court cannot order a writing executed even though the parties erroneously supposed their oral bargain was legally valid. Similarly, if parties to a written instrument understood that part of their previous agreement has been omitted from the writing and rely on oral agreement with one another to vary or add in certain respects to the written agreement, whether they rely on moral obligation or believe that a variation is legally valid, equity cannot reform the writing by the insertion of the oral agreement."

Courts do not make contracts for litigants, and where the allegations of plaintiff's petition unmistakably state that certain written provisions of an assignment of mineral leases were knowingly, intentionally and deliberately inserted, such allegations necessarily close the door to rewriting the contract of the litigants, and omit therefrom written provisions which the litigants knowingly, intentionally and deliberately wrote into their contract. This is so elementary that no authority need be cited.

What has just been said equally applies to the remedy which plaintiff seeks to invoke of having the court to rewrite the assignments, and not only omit therefrom the written provision relieving defendant from the obligation to preserve the leases, or develop them, but to write in lieu thereof provisions directly in conflict therewith under which defendant was obligated to do exactly that which said written provision relieved it from doing, which oral provisions it is alleged were knowingly, intentionally and deliberately not reduced to writing, and not placed in said assignments. The remedy of reformation is not available under the allegations of plaintiff's petition, and the court did not err in sustaining a general demurrer thereto, insofar as the

**932**

petition sought to state a cause of action to reform the contract, and to enforce the contract as reformed by giving damages for breach of such contract for the period prior to the grant of reformation, and for specific performance of said contract after reformation.

It remains to determine whether, accepting as true the allegations of the petition, a cause of action is stated under R.S. Article 4004. The article referred to, so far as it is claimed to be material, reads:

"Actionable fraud in this State with regard to transactions in real estate * * * shall consist of * * * false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false * * * promises * * * shall be * * * liable in actual damages, and in addition thereto, all persons wilfully making such false * * * promises * * * shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages."

It is plaintiff's contention that the allegations of paragraph VI of his petition states a cause for actionable fraud under the quoted article. We therefore again repeat here the allegations of said paragraph verbatim, with this explanation: the "agreements, obligations and undertakings as stated in Sections 2, 3, 4 and 5, Paragraph IV," referred to in said paragraph VI are the oral agreements which it is alleged that defendant made with plaintiff in direct conflict with the written stipulation which was incorporated in the assignment of leases from plaintiff to defendant, which written stipulation is set forth hereinabove:

"VI.

"The defendant through its said authorized agent, Cooper, made the said promises and entered into the said agreements, obligations and undertakings as stated in Sections 2, 3, 4. and 5, Paragraph IV, as material inducements to plaintiff to enter into said contract, and that but for which said promises plaintiff would not have entered into said contract; that at the time plaintiff executed and delivered said contract he believed every and all of said promises and statements then and there made by the defendant and its authorized agents, relied upon said promises and believed that same were made in good faith; that the said promises were at the time made by defendant and its agent false and fraudulent and every and all of them were made as material inducements to persuade plaintiff to enter into said contract and that said false and fraudulent promises, agreements and undertakings were in fact material inducements such as did actually persuade and cause plaintiff to enter into said contract and faithfully to perform his obligations thereunder, as hereinafter more fully stated; that but for said false and fraudulent promises and undertakings on the part of the defendant, plaintiff would not have entered into said contract; that defendant, at the time of making the said false promises and entering into said agreements did not intend to perform them, but, on the contrary, then and there had the deliberate and wilfull intention of not performing them, except only with respect to its making the geophysical exploration of the said lands, as contemplated and provided for in the contract, and which said geophysical exploration it did actually make as hereinafter shown.

"Wherefore, plaintiff is entitled to have his said contract, as set forth in his assignments of said leases to the defendant, reformed by the complete elimination of all of that part of the said written assignments as shown and copied verbatim in paragraph V, as aforesaid, and in lieu thereof the substitution of sections 2, 3, 4 and 5 of the foregoing paragraph IV, to the end that the said assignments and contract, as thus reformed may state and reflect the actual agreement originally entered into between plaintiff and defendant, in accordance with the foregoing allegations."

■■ Now it is clear from the allegations just quoted, that the oral promises (designated by plaintiff as "sections 2, 3, 4 and 5 of paragraph IV") were pled by plaintiff to be the real and true contract between the parties and that these promises were broken by defendant, and in fact were never intended by it to be performed. Such allegations do not allege actionable fraud; they do not allege a tort, but allege a breach of contract, that defendant intended to breach the contract when it was made. Article 4004 was never intended to apply to breaches of contract. In every bilateral contract at least one of the parties to the contract promises to do some act in the future, and makes such promise "as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract". In order for Article 4004 to apply to a transaction in real estate the false promise must relate to something which is collateral, and not be the consideration of the very contract, for breach of which plaintiff sues. By way of illustration, we refer to Sibley v. Southland Life Ins. Co., Tex.Sup., 36 S.W.2d 145, 146. That was an action for deceit founded, among other grounds, upon a false promise made by Sibley and a lumber company in which he was interested, to the insurance company, and in a land transaction. The facts were that Sibley wished to have a trade negotiated of 22 houses and lots in an addition for land belonging to the insurance company. The construction work on some of the houses was incomplete at the time, but Sibley, and the lumber company promised that all such work would be completed after the trade was effected. This promise was found by the jury to be false, and was the inducing cause of the trade. A written contract was made and was subsequently concluded by the passage of deeds between the insurance company and the lumber company. The court held in part: "Sibley contends that his promise regarding the completion of the buildings carries but secondary liability to answer for the default of the lumber company in the respect mentioned, and, being oral, is not enforceable. Considered in a contractual aspect, his promise would probably be subject to the rule invoked. But, as has already been shown, the cause of action growing out of such promise, which the insurance company asserts herein, is grounded in tort and not in contract. Responsibility for the tort committed is not affected by the fact that the false promise was made orally." The false promise there involved was a material inducement to the plaintiff to make the land transaction, i.e., there was a land transaction to which said false promise was collateral, and served to bring about and was made to induce the contract. It operated in the same way that any false and fraudulent representation of an existing fact would operate which served to induce one to enter a contract. In the present case plaintiff's suit was in fact for the breach of what plaintiff alleges was the true agreement. It is his complaint that defendant never intended to perform its real contractual obligations to him at all, that it intended to breach them from the beginning. But these oral promises, which he alleges constituted the only true understanding between the parties, were not collateral to some other transaction, they were not alleged to be an inducement to enter into some other real estate transaction, but were alleged to be the only true transaction between the parties. The remedy for the breach of the alleged oral contract is a suit for damages for breach of contract. It may be that plaintiff would encounter difficulties if he sued merely for breach of contract. But the statute was not enacted to enable a plaintiff, whose real complaint is that a defendant breached a contract, to sue in tort merely because the law against varying or contradicting the terms of a written contract might make a recovery of damages for breach of contract difficult if the suit is ex contractu.

We have carefully considered the allegations of the petition to see if they state a cause of action under Article 4004. We have concluded that they fail to do this. They merely sue upon a contract, and not in tort, because the allegation that the defendant intended to breach its part of the contract when made, and that it thereafter did breach same, does not allege a tort action under Article 4004, or otherwise.

Finding no error, the judgment of the trial court will be affirmed.

Affirmed.

GRAVES, Justice (dissenting on motion for rehearing).

The fuller light of an extended rehearing has converted the reluctance with which my acquiescence in the former affirmance of this appealed-from judgment was recorded, into a conviction now that it should be reversed and the cause remanded; wherefore,

934

this dissent from the present order overruling the appellant's motion for a rehearing.

I differ with these among others of this court's constructions of appellant's petition, as well as its consequent applications of law thereto, to-wit:

(1) "Now it is clear from the allegations just quoted, that the oral promises (designated by plaintiff as 'sections 2, 3, 4 and 5 of paragraph IV') were pled by plaintiff to be the real and true contract between the parties and that these promises were broken by defendant, and in fact were never intended by it to be performed. Such allegations do not allege actionable fraud; they do not allege a tort, but allege a breach of contract that defendant intended to breach the contract when it was made. Article 4004 was never intended to apply to breaches of contract."

(2) "In order for Article 4004 to apply to a transaction in real estate the false promise must relate to something which is collateral, and not be the consideration of the very contract, for breach of which plaintiff sues."

(3) "In the present case plaintiff's suit was in fact for the breach of what plaintiff alleges was the true agreement. It is his complaint that defendant never intended to perform its real contractual obligations to him at all, that it intended to breach them from the beginning. But these oral promises, which he alleges constituted the only true understanding between the parties, were not collateral to some other transaction, they were not alleged to be an inducement to enter into some other real estate transaction, but were alleged to be the only true transaction between the parties. The remedy for the breach of the alleged oral contract is a suit for damages for breach of contract."

(4) "We have carefully considered the allegations of the petition to see if they state a cause of action under Article 4004. We have concluded that they fail to do this. They merely sue upon a contract, and not in tort, because the allegation that the defendant intended to breach its part of the contract when made, and that it thereafter did breach same, does not allege a tort action under Article 4004, or otherwise."

Only brief comment will be added to indicate wherein these differences lie.

It may be freely conceded that Article 4004 was not intended to apply to mere breaches of contract, but how, under the extended allegations in this petition to the contrary, it can be deduced that the only contract really declared upon was the oral promise alleged to have been made by the appellee to appellant, and that they did not declare upon a tort but merely upon a breach of contract, does not readily appear; indeed, this brief excerpt alone from the petition seems to plainly import an opposite meaning:

"The defendant through its said authorized agent, Cooper, made the said promises and entered into the said agreements, obligations and undertakings as stated in Sections 2, 3, 4 and 5, Paragraph IV, as material inducements to plaintiff to enter into said contract, and that but for which said promises plaintiff would not have entered into said contract; that at the time plaintiff executed and delivered said contract he believed every and all of said promises and statements then and there made by the defendant and its authorized agents, relied upon said promises and believed that same were made in good faith; that the said promises were at the time made by defendant and its agent false and fraudulent and every and all of them were made as material inducements to persuade plaintiff to enter into said contract and that said false and fraudulent promises, agreements and undertakings were in fact material inducements such as did actually persuade and cause plaintiff to enter into said contract and faithfully to perform his obligations thereunder, as hereinafter more fully stated; that but for said false and fraudulent promises and undertakings on the part of the defendant, plaintiff would not have entered into said contract; that defendant, at the time of making the said false promises and entering into said agreements did not intend to perform them, but, on the contrary, then and there had the deliberate and wilful intention of not performing them, except only with respect to its making the geophysical exploration of the said lands, as contemplated and provided for in the contract, and which said geophysical exploration it did actually make as hereinafter shown."

This clearly charges that the contract consisted of two parts, the one written and the other oral, that appellant was to get as his major consideration for obtaining the leases for the appellee 1/48 part of the royalties on oil and gas, which, by all the authorities (Caballero v. Taylor, Tex.Civ.App., 290 S.W. 815; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566;

Sheffield v. Hogg, 124 Tex. 290, 77 S. W.2d 1021, 80 S.W.2d 741), constituted real estate, and that as incidental and subsidiary thereto, to induce him to enter into that undertaking, its oral promises to make the geophysical explorations and then select, by the process of elimination, the lands that were to remain as the final subject matter of their agreements, were added; not only so, but it was specifically further charged that the Company at the very moment of making such promises did not intend to perform them, except only with respect to making the geophysical explorations, such intent making the promises false and constituting the cause-of-action thereby alleged one in tort, and differentiating it from one for breach of contract only. These averments, therefore, comprehended all the three essential elements of a tort-action for fraud, under R.S.Article 4004, that is:

"1. A false promise must be made (the statute does not undertake to define false promise, but it is used in its common-law sense and in the sense long established by the decisions of the Supreme Court of Texas);

"2. Such false promise must be made a material inducement to another to enter into a contract and must have induced the other party to enter into the contract; and,

"3. There must be a contract entered into (as a result of the false promise)." 51 A.L.R., Annotation on False Promises, pp. 63 to 68; King v. Wise, Tex.Com.App., 282 S.W. 570, 573.

This legal effect given the making of such false representations, at that very time not intending to carry them out, is not at all emasculated as a tort by further averments to the effect that the appellee did later on breach all of the declared-upon oral promises; that was a mere incidental and subsequent occurrence.

A breach, therefore, of these oral promises, which themselves were wholly collateral and incidental to the writings yielding to the appellant 1/48 part of the royalties from the lands he delivered to the appellee, therefore necessarily related to something that was collateral rather than constituting the sole consideration for the only contract declared upon.

Wherefore, such being the plain intendment of the two-pronged agreement the parties entered into, and the petition having at great length detailed as an existing fact that at that very time appellee intended never to thereafter perform its well-defined undertakings, except in the single detail mentioned supra, the resulting cause-of-action so stated does not seem distinguishable from that ruled upon by our Supreme Court in Sibley v. Southland Life Ins. Co., 36 S.W.2d 145.

Under these conclusions, the motion for rehearing should have been granted, and the cause remanded to the court below for a trial on its merits.