Kenneth A. **WIRTZ** et ux, Appellants,

v.

H. N. **ORR** et ux, Appellees.

No. 8602.

Court of Civil Appeals of Texas, Texarkana.

Nov. 21, 1978.

Rehearing Denied Dec. 28, 1978.

**68**

Timothy E. Kelley, Dallas, for appellants.

John M. Gillis, Gillis & Rogers, Dallas, for appellees.

CORNELIUS, Chief Justice.

This is a suit by Orr against Wirtz to recover damages for breach of contract and for fraud allegedly perpetrated in an exchange of real estate. Trial was to a jury which found in Orr's favor. Actual damages of $47,500.00 and punitive damages of $15,000.00 were awarded for fraud, together with an additional $31,832.27 for breach of contract.

Orr owned a 49-unit apartment complex in Irving, Texas, worth $350,000.00, but encumbered with a $168,000.00 mortgage. He needed cash to pay certain debts, including a $37,000.00 debt to his ex-wife who had been awarded an interest in the apartment complex, and he decided to sell the complex to raise the needed funds. Wirtz owned a 185 acre farm in Cass County, Missouri, worth $200,000.00, and he had listed it for sale with Spitz and Wallace who were Missouri real estate brokers. The farm was unencumbered except for a $9,547.16 silo mortgage. The parties ultimately made contact and agreed to exchange their properties. Four written instruments figure prominently in the dispute—three different contracts for the exchange of the properties and one closing statement which Wirtz contends correctly sets out the understanding of the parties. The first contract was prepared by the realtors and was signed by the parties. It was dated May 23, 1972, and provided in general language for the exchange of the properties. In addition, it contained these provisions:

"THIS CONTRACT IS DRAWN CONTINGENT ON H. N. ORR BEING ABLE TO GET A $75,000.00 LOAN ON THE FARM OR KENNETH WIRTZ CARRING (SIC) A LOAN UNTIL THE LOAN CAN BE OBTAINED."

"THE DIFFERENCE IN EQUITIES WILL BE CARRIED BACK BUY (SIC) KENNETH WIRTZ, ON THE FARM."

It was undisputed that Orr was depending on the proceeds of the loan to pay debts and furnish operating capital for the farm he was acquiring.

A major point of controversy is the question of difference in equity. Wirtz contended that he was to be paid $18,000.00 as the difference between the net value of his farm and the net value of the apartments, and at the closing he deducted that amount in addition to other amounts from the loan proceeds going to Orr. Orr contended that, although the original agreement was for Wirtz to get an $18,000.00 equity difference, that provision was abandoned during the progress of the negotiations because of some discoveries which adversely affected the value of Wirtz' farm. A second contract was prepared by a Missouri attorney but was never signed. A third contract was prepared and signed by all parties on June 30, 1972. Neither the second nor the third contract mentioned any difference in equity, but the final agreement did contain these significant provisions: (1) Wirtz agreed to secure a loan on the farm for Orr in the sum of $55,000.00 "or more", (2) Wirtz represented that he then had a commitment for a $48,552.84 loan, and (3) Wirtz agreed to pay the $9,547.16 silo mortgage, or if he failed to do so, Orr could pay the balance owing on it and such amount would "be deducted from the balance of original $75,000.00 on loan for the Cass County, Mo. property."

In closing the transaction, Wirtz procured a loan for Orr's benefit of only $47,500.00 rather than the $75,000.00 originally contemplated. Orr, however, executed a note to Wirtz, secured by a deed of trust on the Missouri farm, for $65,452.84 representing the $75,000.00 contemplated loan, less the

$9,547.16 owed on the silo which Wirtz contended Orr agreed to assume, thus placing a $75,000.00 debt load on Orr. From the loan proceeds Orr claimed he was entitled to receive and use for the purpose of paying debts and to operate the farm, Wirtz withheld the $18,000.00 equity difference he contended he was to get, as well as another $4,285.11 due Orr which Wirtz chose to allow Orr as a credit on his note rather than to pay him in cash. The note and deed of trust on the farm which had been given to Wirtz by Orr was transferred by Wirtz to a third party. Orr, failing to get the necessary cash to pay his debts and to operate the farm, lost the farm by foreclosure to the new holder of the note and deed of trust, and subsequently brought suit against Wirtz for breach of contract and fraud.

It was undisputed that Wirtz did not have the loan commitment that he had represented he had and that a loan of only $47,500.00 had been secured for Orr's benefit. In addition, the jury found that (1) Orr did not agree to pay Wirtz an $18,000.00 equity difference, (2) Orr did not agree to assume the silo mortgage of $9,547.16 without a compensatory consideration, (3) Orr did not agree to accept a credit for the $4,285.11 rather than cash, and (4) Orr was actionably defrauded by Wirtz.

In his first and third points of error Wirtz attacks the jury issues on fraud and punitive damages. The attack is two-pronged. First it is asserted that the issues should not have been submitted because the alleged fraudulent representations were nothing more than the contractual promises themselves, for the breach of which an action for breach of contract, but not for fraud, will lie. *Long v. Humble Oil & Refining Co.*, 154 S.W.2d 925 (Tex.Civ.App. Galveston 1940, writ ref'd w. o. m.), is relied upon to support this assertion. That case ruled that in order for a suit for fraud arising out of a real estate transaction to be maintained under Article 4004 (now Tex. Bus. & Comm.Code Sec. 27.01) the alleged false promise must relate to something which is collateral, and not be the consider-

ation of the very contract for the breach of which the plaintiff sues. But we do not believe *Long* is dispositive of this appeal for two reasons. First, Wirtz and Orr entered into the following stipulation prior to the submission of the case:

"The parties, by and through their attorneys, agree and stipulate that the proposed generalized Charge fairly and fully submits the ultimate Issues of this case and further agree that: (1) a 'We do not' answer to any sub part of Issue No. 1 will support a judgment, for Plaintiff in the amount indicated in the sub part so answered, and (2) a 'He was' answer to Issue No. 2 will support a judgment for the Plaintiff in the amount found in Issue No. 3, and (3) a 'We do' answer to Issue No. 4 will support a judgment for the Plaintiff in the amount found in Issue No. 5, all subject to Defendants' objections on the existence and sufficiency of the evidence as hereinafter made. The parties waive all objections to the form or substance of the proposed Issues, Definitions and Instructions.

"Defendants expressly reserve their rights to object and do object to the Issues on the sole grounds that:

(a) there is no evidence to support the submission of said Issues;

(b) there is insufficient evidence to support the submission of said Issues;

(c) a finding to said Issues favorable to the Plaintiff would be so against the greater weight and preponderance of the evidence so as to be manifestly unjust."

Having agreed that the case was fully and fairly submitted as to the ultimate issues and that an affirmative answer to the fraud and punitive damage issues would support a judgment for Orr in the amount found, Wirtz cannot now complain that Orr could recover only in breach of contract and not in fraud. See 53 Tex.Jur.2d, Stipulations, Sec. 3, p. 315; Sec. 17, p. 333. Compare *Peavy-Moore Lumber Co. v. Spreckles*, 153 S.W.2d 325 (Tex.Civ.App. Beaumont 1941, writ ref'd w. o. m.). Second, the evidence will support a conclusion that the promise of Wirtz to furnish Orr a loan in the agreed

amount for the purpose of paying debts and operating the farm was collateral to, and an inducement for, the contract rather than the contractual consideration itself. The documents executed by the parties are far from clear and are subject to different constructions. The jury could reasonably have concluded that the basic contract between Wirtz and Orr was the exchange of their respective properties, and that the agreement to furnish the loan was a collateral promise made for the purpose of inducing Orr to enter into the contract. If that provision was made with the intention of not fulfilling it, it would constitute actionable fraud. Tex.Bus. & Comm.Code Sec. 27.-01. Punitive damages are recoverable in such cases. Tex.Bus. & Comm.Code Sec. 27.01(c) and *Cliett v. King*, 54 S.W.2d 168 (Tex.Civ.App. Waco 1932, writ dism'd).

■ The other attack on the jury issues of fraud and punitive damages urges that there was no evidence or insufficient evidence to support them and that the jury's answers to them are against the great weight and preponderance of the evidence. This attack is based primarily on the contention that Wirtz personally made no representations to Orr and that there was no finding that the realtors were Wirtz' agents as to any representations they made. We cannot agree. Wirtz admitted that Spitz and Wallace were his real estate agents and they were authorized to negotiate the trade for him. But there is ample evidence from which the jury could have found that Wirtz personally made representations which were false. The jury obviously believed that Wirtz represented that he would furnish Orr a $75,000.00 loan, and that such representation was made with the intention of not fulfilling it. Wirtz admitted that his representation that he had a commitment for a $48,452.84 loan was false, although he contends that he substantially complied with that representation when he furnished Orr with a loan of $47,500.00. Still, Orr accepted a debt load of $75,000.00 and in return got loan funds of only $47,500.00. The jury apparently believed that Wirtz never intended to honor his contract or the promise regarding the loan, and in fact

intended to keep $18,000.00 for himself regardless of the agreement. Considering the record as a whole, we cannot say the jury's answers to the fraud and punitive damage issues are without sufficient support in the evidence or are so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Wirtz insists that the answers are against the evidence because Orr signed a closing statement for the Texas part of the transaction which approved the disbursements as they were later actually made. But Orr testified that he did not understand the figures on the closing statement and that he thought they were just for tax purposes and that the true agreement would be reflected when the final closing statements were prepared in Missouri. The evidence was conflicting on the issue, of course, but it was for the jury to accept which evidence it would believe and to resolve the conflict accordingly. Certainly the closing statement is not so clear and unequivocal on its face that Orr's signing of it would preclude his standing on the contract of June 30 as he understood it.

■ Point of error No. 2 argues that the jury's answer to Special Issue No. 1 to the effect that Orr did not agree to pay an $18,000.00 equity difference, did not agree to assume the silo mortgage without compensatory consideration, and did not agree to accept credit for the $4,258.11 rather than cash, was against the great weight and preponderance of the evidence. We disagree.

Unquestionably the first agreement contemplated that Wirtz would receive $18,000.00 for the difference in equities between the respective properties. Orr, however, testified that during the course of the negotiations and prior to the execution of the ultimate contract on June 30, three facts had been discovered which reduced the value of Wirtz' farm and caused the parties to drop the $18,000.00 equity difference from the agreement. Those facts were that a crop of wheat which Orr was to receive was harvested prematurely by

Wirtz, it developed that a long-term federal land bank loan which the parties contemplated was not available, and there was a shortage of 42 acres of highway frontage which had been represented to exist. The jury obviously chose to believe this evidence and we cannot say that its finding is against the great weight and preponderance of the evidence.

As concerns the silo mortgage, it is clear that Orr agreed to assume it if Wirtz did not pay it, but the contract provided in such a case that he was to deduct that amount from the $75,000.00 loan he was to receive from Wirtz. Instead, Wirtz neither paid the silo mortgage nor furnished the $75,-000.00 loan, but still sought to reduce the funds which were available to Orr by the amount of the silo mortgage. From the evidence in the record the jury could reasonably have believed that it was the intention of the parties that the money to be initially advanced to Orr by Wirtz would not be reduced by the amount of the silo mortgage, and that was the effect of their answer.

As to the $4,285.11 credit, there is evidence that such an amount was due Orr in cash even after Wirtz had deducted the contested $18,000.00 and $9,547.16 for the equity difference and the silo mortgage. Instead of paying that amount in cash, Wirtz simply credited Orr with that amount at the end of the note he owed on the farm, a procedure to which Orr testified that he did not agree.

In points 5 and 8 it is contended that it was error for the court to admit into evidence certain information from Wirtz' federal income tax return and to allow the jury to consider such evidence. In attempting to impeach Wirtz on his claim that he was to receive an $18,000.00 equity difference, Orr's attorney sought to introduce Wirtz' 1972 income tax return. The return was not available but it had been inspected *in camera* by the trial judge at a deposition which had been previously taken. At this trial, portions of that deposition, where the trial judge stated that his inspection of the 1972 tax return revealed that no $18,000.00

gain was reported by Wirtz, were read to the jury. Wirtz' attorney had objected to such evidence when Orr's attorney first questioned Wirtz about it and was overruled, but he did not re-urge his objection later when the portion of the deposition was read. Regardless of the nature of Wirtz' objection, we believe the evidence was properly admitted. Any competent evidence not privileged is admissible if it logically tends to prove or disprove a material fact in issue. 23 Tex.Jur.2d, Evidence, Sec. 124, p. 178. And any statement or act of a litigant, not privileged, which is inconsistent with his position taken at the trial is admissible as an admission against interest. *Ledisco Financial Services, Inc. v. Viracola*, 533 S.W.2d 951 (Tex.Civ.App. Texarkana 1976, no writ); 2 McCormick & Ray, Texas Evidence, Sec. 1141, p. 29 (2d ed. 1956). Wirtz had claimed that he believed he was entitled to an $18,000.00 equity difference, and any act or statement on his part inconsistent with that position would be relevant to dispute that claim. The fact that there was some disagreement as to whether or not such a gain, even if claimed, was required to be reported on the income tax return would go to the weight rather than to the admissibility of such evidence.

Point of error 6 asserts that reversible error was committed when Orr's attorney was allowed to introduce in evidence the testimony of the realtor Wallace which had been given at a previous trial of this cause. No predicate was laid for the introduction of the former testimony except that Wallace was not present and that he was a resident of Missouri. Such facts are not sufficient in themselves to authorize the receipt of previously given testimony. To permit the introduction of the previous testimony under such circumstances it must also be demonstrated that the proponent cannot reasonably procure the testimony of the absent witness by deposition or otherwise. *Hall v. White*, 525 S.W.2d 860 (Tex. 1975); *Stohn v. Bryant*, 283 S.W.2d 299 (Tex.Civ.App. Dallas 1955, writ ref'd n. r. e.); *Carter v. Irvine*, 77 S.W.2d 247 (Tex. Civ.App. Waco 1934, no writ); *Morris v.*

*Davis,* 292 S.W. 574 (Tex.Civ.App. Austin 1927, writ ref'd). However, we have concluded that the admission of Wallace's former testimony was not such an error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment, as is required for reversible error by Tex.R.Civ.P. 434. The testimony was largely cumulative of evidence already given by Wirtz and Orr. When the testimony was given Wallace was cross-examined thoroughly by Wirtz' present attorney, and at this trial he read the cross-examination to the jury. Wallace's testimony was of a non-continuing nature and there was no indication that it would have been any different on the second trial. And, although Wallace was a party at the first trial and was not a party at the second trial, he still would have been subject to examination by Orr's counsel as an adverse witness had he been available, because he was admittedly Wirtz' agent.

 Lastly, Wirtz contends that the trial court abused his discretion in having certain portions of Orr's testimony re-read to the jury. At one point in their deliberations, the jury advised the court, "We disagree as to the date Mr. Orr testified he became aware that the 42A was not included in the deal. We wish to have the court reporter search his notes and read to us the testimony of the witness Orr on this point." The court searched the testimony and, advising the jury that there was no direct answer in Orr's testimony to the question posed by the jury, selected portions of Orr's testimony which appeared relevant to the question and had those re-read to the jury. In doing so, the court gave an elaborate instruction to the jury advising them that he made no representation concerning the relevancy of the testimony selected or that it was all the testimony on the issue under consideration. Wirtz urges that the court's action constituted an impermissible comment on the evidence, as it indicated that the court thought the portions of the testimony selected to be re-read were relevant to the question posed by the jury.

We do not believe there was an abuse of discretion. Tex.R.Civ.P. 287 provides that in a case such as this the judge shall cause to be read to the jury ". . . that part of such witness' testimony on the point in dispute; . . ." By the very nature of the situation, the trial judge is required to exercise judgment and discretion in deciding what part of the testimony is relevant to the point in dispute, and his discretion is very broad. *Aetna Casualty and Surety Company v. Scott,* 423 S.W.2d 351 (Tex.Civ. App. Houston-14th Dist.1968, no writ). In the circumstances of this case, and considering the court's careful instruction to the jury, we find there was no abuse of discretion in the procedure used.

All of the points of error are overruled and the judgment of the trial court is affirmed.