**C. F. STOHN, Appellant,**

v.

**James M. BRYANT, Appellee.**

**No. 14998.**

Court of Civil Appeals of Texas. Dallas.

Sept. 30, 1955.

Rehearing Denied Oct. 28, 1955.

Marshall & Carlton, Dallas, for appellant.

C. C. Renfro, Dallas, for appellee.

CRAMER, Justice.

This is a second appeal in this cause, the first appeal having been reported in Bryant v. Stohn, Tex.Civ.App., 260 S.W.2d 77, error ref. n. r. e.

The pleadings, after remand, were amended and in substance alleged Stohn became acquainted with Bryant late in 1947

or early in 1948; that Bryant thereafter cultivated Stohn and his wife socially and they became very good friends; that prior to June 4, 1948 Bryant suggested that he had good friends in the oil business and could obtain from them information that would enable Stohn to buy some oil interests at a good price and make a profit; that, believing Bryant, he told Bryant that if he would furnish the information which would enable him to buy good oil property at a reasonable price, he would divide the property with Bryant; that some time thereafter (June 4, 1948) Bryant told him he had located the property which they had been looking for and because of his close friendship with an official of the Core Drilling firm he was in a position to secure advance information; that Bryant exhibited to him a Schlumberger Report on which was written "$15,000 barrels per acre," and represented that Davidson (an official of Core Drilling Company) had made the notation and that such report was taken from the well known as Lassiter No. 1 located in Coke County which was producing from the Marble Falls sand; that there was an additional 80-ft. section of Strawn sand at around 2,500 feet; that "Davidson said it was a good buy * * *." Stohn further alleged that the facts were that Bryant did not spend any time with Davidson and Davidson did not put the notation on the report and did not spend the afternoon with Bryant; and that such statements were made to induce him to purchase such royalty. Further that Bryant stated to him that certain oil royalties could be purchased in Coke County under a spread of acreage in the vicinity of the Lassiter Well; that 280 royalty acres were available at $67,000; that the royalty cost $200 to $250 per acre, when in fact it only cost $100 per acre; that Bryant represented to him that the royalty cost $200 to $250 per acre to induce him to buy the same; that he, Stohn, relied on Bryant's representations in making the purchase of 280 royalty acres. Further alleged the representation that Davidson made the notation on the Schlumberger Report was false, was of a material fact, and was made with intent and purpose of inducing him to purchase; and that he relied thereon. Further that the royalty was in fact worthless and he suffered damages as a direct result thereof in the sum of $67,000. He further alleged that Bryant represented to him that the royalty cost Barbre $200 to $225 per acre, to induce him to induce him to buy; that Bryant knew such representation was false; that he, Stohn, relied thereon and purchased the royalty, but for such representation would not have purchased same; that the value of the royalty as represented would have been $67,000 or more, but that its actual worth as delivered to him was nil, in that it had no value at that time, June 5, 1948. He further alleged the representations to him were representations of fact made for the purpose of inducing him to buy; that he would not have bought except for same; and prayed for $67,000 actual and $10,000 exemplary damages.

Bryant answered by general demurrer, general denial, and denied specifically each alleged misrepresentation, and pled affirmatively that he made an informal agreement with Stohn that if he could find wildcat royalty for purchase at a price satisfactory to Stohn, he would receive for his services an undivided one-half of the interest so purchased; that the agreement did not contemplate that proven royalty would be purchased, but that wildcat would be purchased near a test well in process of drilling; that with Stohn's knowledge and consent he, on the same night, put in a phone call to Barbre, with Stohn listening in on the call, to ascertain whether any royalty near the Lassiter test could be bought and, if so, at what price. That he, Bryant, did not make any statement to Stohn as to what Barbre said; that as a result of the phone call, Stohn on the same night agreed to purchase 280 royalty acres for $67,000 and agreed to meet Sharp in the Mercantile National Bank on June 5th. At such meeting the deal was completed. However, the deeds theretofore prepared were made out to Bryant, since Sharp had not obtained the full name of Stohn, or did not understand that the deeds were to be made to Stohn.

Bryant then made deeds to Stohn for one-half of the royalty conveyed in the Sharp deed. Bryant specifically denied that he represented to Stohn that the royalty cost Barbre $200 to $225 per acre, but that Stohn heard the conversation between him and Barbre. Bryant also specifically denied that he did anything with intent to defraud Stohn and alleged that the only benefit he derived from the transaction was the interest in the royalty; that he did locate the royalty purchased pursuant to his agreement with Stohn and that Stohn had as much knowledge as to the value as he, Bryant, had; that so far as he knows, Stohn still has the acreage involved; that no test well has been drilled thereon and, so far as is known, it may have oil under it.

The evidence on the trial of the cause followed generally the allegations in the pleadings and directly conflicted on all issues made by such pleadings.

The jury, after hearing, argument, etc., in answer to special issues found in substance: (1) That on or about June 4, 1948 Bryant did not represent to Stohn that Davidson had made a notation on the Lassiter Well Schlumberger Report that there were 15,000 recoverable barrels of oil per acre. Issues (2) to (6) not answered, according to instructions. (7) That Bryant did not represent to Stohn that the royalty in question cost Barbre $200 to $225 per acre; and (8) that the fair market value per acre of the royalty in question as conveyed to Stohn on or about June 5, 1948 was $200 to $225 per acre. The jury also found against Stohn on the issue of exemplary damages.

On such verdict the trial court entered judgment for Bryant; that Stohn take nothing. And Stohn duly perfected this appeal, here briefing four points of error.

Points 1 and 2 briefed together assert in substance, error of the trial court in (1) refusing to submit to the jury appellant's issues (a) to (e) inclusive; (2) in refusing to submit appellant's requested instruction applicable to his requested issue (b). These points are countered that there is no allegation that Bryant referred Stohn to Barbre or that Barbre made a false statement to Stohn which caused him to buy the royalty, and absent such allegations the requested issues were correctly refused.

The requested issues (a) to (e) inquired, in substance, whether or not: (a) Bryant referred Stohn to one Bill Barbre on or about June 4, 1948 for information concerning the royalty here involved; (b) Bryant represented to Stohn that the royalty involved on or about June 4, 1948 cost Barbre $200 to $225 per acre; (c) such representation, if any, was false; (d) such false representation, if any, was made with the intention to induce Stohn to purchase the royalty involved; (e) Stohn believed and relied upon such false representations, if any; and (f) whether or not such false representation, if any, induced Stohn to pay $67,000 for the royalty in question.

The requested instruction was as follows: "In this connection, you are instructed that if one party to a transaction refers the other to a third person for information, the fraudulent misrepresentations, if any, made by such third person are the same as if made by the party making the reference."

In our opinion from a reading of the issues requested and the issues submitted, the cause was not submitted to the jury on the theory on which it was tried, to wit, that if Bryant referred Stohn to Barbre for information on the property (royalty) in question and as to its value, Barbre's representations were the representations of Bryant as a legal consequence of such reference (see our opinion on former appeal of this case). Under such a record, in our opinion it was error to refuse the requested issues and the requested instruction. Points 1 and 2 are sustained.

Point 3 asserts error in admitting over timely objection the testimony of Bill Barbre from a statement of facts on the prior trial of this cause for the reason that said testimony was hearsay. Point 3 is countered that the admission of such testimony, if error, was harmless. The record discloses that certain evidence of Barbre given on the former trial was admitted over

timely objection of Stohn to the effect that it was hearsay. Such testimony being in substance that he gave Bryant a Schlumberger Report about a week or 10 days after he had made his buy, about June 14 or 15, or something like that; had paid $200 an acre for it. It was in sections 307 and 298; some of it was a part of the Sharp purchase; that he bought another piece of royalty at $250 in the Callie May Cargile Little tract of 40 acres; and as follows:

"Q. (By Mr. Marshall) Do you know what happened to the $67,000 that Mr. Sharp got? A. Yes.

"Q. Will you tell us? A. Yes, sir. It was put in the Jones and O'Brien account at Shreveport.

"Q. Did you get any part of it? A. No, sir."

Appellant cites Morris v. Davis, Tex.Civ. App., 292 S.W. 574, writ ref.; and Carter v. Irvine, Tex.Civ.App., 77 S.W.2d 247. These authorities are in point. However, appellee also states that the error, if any, is harmless and not reversible because the series of issues based in part upon such evidence would not establish a case of actionable fraud. We have examined the record and cannot hold that the error is harmless. Point 3 is sustained.

Point 4 asserts error in the trial court's failure to grant appellant a new trial because of an inflammatory and prejudicial argument as to appellant being in a 75% to 80% tax bracket and referring to appellant's purchasing the royalty with tax money. This point is countered that if the argument was error, appellant failed to take appropriate steps to preserve his Bill. There is no question in our minds but that the argument was improper and prejudicial and if properly preserved is reversible error. The record shows appellant objected to the argument and the objection was sustained, but that appellant made no request to instruct the jury to disregard the argument. It further appears that thereafter another reference was made in the argument to Stohn's being within the higher tax bracket, but that no objection was interposed or motion to instruct the jury to disregard the same was made to this latter argument.

Considering such record, we cannot say the argument in this case was not calculated to and did not influence the jury in arriving at their verdict, and that the effect of such argument could have been cured by an instruction by the court. Point 4 is therefore sustained.

For the errors indicated, the judgment of the trial court is reversed and remanded for another trial.

Reversed and remanded.

YOUNG, Justice (concurring).

My concurrence in the order of reversal herein is limited to appellant's point No. 3; that is, insufficiency of predicate for introduction of parts of Bill Barbre's testimony, taken from statement of facts of previous trial. At time of the present trial, Mr. Barbre was temporarily a resident of Colorado; and the record discloses no attempt made to take the deposition of such witness of appellee. Morris v. Davis, Tex.Civ.App., 292 S.W. 574 (writ ref.). See also Carter v. Irvine, Tex.Civ.App., 77 S.W.2d 247, 249, the Waco Court there going on to say: "The Court of Civil Appeals at Austin, in the case of Morris v. Davis, 292 S.W. 574, 575, par. 1, after reviewing the authorities in this state, held that though the witness reside outside the county, or even, as in that case, outside the state, if his whereabouts were known and it was reasonably apparent that his deposition could have been taken, his testimony given at a former trial should not be admitted. The Supreme Court refused a writ of error in that case."